Gray, J.
The defendant, having been indicted and convicted, in the Circuit Court of the United States for the District of Colorado, of the murder of Thomas Casey, within the boundaries of the Ute reservation in that District, moved in arrest of judgment for want of jurisdiction of the Court. The indictment does not allege that either the accused or the deceased was an Indian. The certificate of division, upon which the case has been brought to this Court, states that at the trial it appeared that both were white men, and that the murder was committed in the District of Colorado, within the Ute reservation, the said Ute reservation lying wholly within the exterior limits of the State of Colorado; and that, upon the motion in arrest of judgment coming on to be heard before Mr. Justice Miller and Judge Hallett, their opinions were opposed upon this question: “Whether the Circuit Court of the United States sitting in and for the District of Colorado, has jurisdiction of the crime of murder, committed by a white man upon a white man, within the Ute reservation in said District, and within the geographical limits of the State of Colorado? ”
The Circuit Courts of the United States have jurisdiction of the crime of murder committed in any “place or district of country under the exclusive jurisdiction of the United States;” and, except where special provision is made, “the general laws of the United States as to the punishment of crimes committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.” Rev. Stat., Sec. 629, cl. 20; Sec. 2145; Sec. 5339, cl. 1.
By the second article of the treaty between the United States and the Ute Indians of March 2, 1868, the United States agreed that a certain district of country therein described should be set *379 apart for the absolute and undisturbed use and occupation of the Indians therein named, and of such other friendly tribes or individual Indians as from time to time they might be willing, with the consent of the United States, to admit among them; and that no persons, except those therein authorized so to do, and except such officers, agents, and employees of the government as might be authorized to enter upon Indian reservations in discharge of duties enjoined by law, should ever be permitted to pass over, settle upon, or reside in the territory so described, except as otherwise provided in the treaty. The sixth article provided that, “if bad men among the whites or among other people, subject to the authority of the United States, shall commit any wrong upon the person or property of the Indians,” the United States, upon proof made to the agent, and forwarded to the Commissioner of Indian Affairs, would proceed at once to cause the offender to be arrested and punished according to the laws of the United States; and “ if bad men among the Indians shall commit a wrong or depredation upon the person or property of any one, white, black, or Indian, subject to the authority of the United States and at peace therewith, the tribes herein named solemnly agree that they will, on proof made to their agent and notice to him, deliver up the wrongdoer to the United States, to be tried and punished according to its laws.” By the seventh article, “the President may at any time order a survey of the reservation, and when so surveyed, Congress shall provide for protecting the rights of such Indian settlers in their improvements, and may fix the character of the title held by each;” and “the United States may pass such laws on the subject of alienation and descent of property, and on all subjects connected with the government of the Indians on said reservation and the internal police thereof, as may be thought proper.” 15 Stat., 619-621.
By the first section of the act of Congress of February 28, 1861, to provide a temporary government for the Territory of Colorado, all territory which, by treaty with any Indian tribe, was not, without its consent, to be included within the territorial limits or jurisdiction of any State or Territory, .was excepted out of the boundaries and constituted no part of the Territory of Colorado; and by the sixteenth section, “the Constitution and all laws of the United States, which are not locally inapplicable, shall have the same force and effect within the said Territory of *380 Colorado as elsewhere within the United States.” (12 Stat., 172, 176.) If this provision of the first section had remained in force after Colorado became a State, this indictment might doubtless have been maintained in the Circuit Court of the United States. United States v. Rogers, 4 How., 567; Bates v. Clark, 95 U. S., 204; United States v. Ward, 1 Woolworth, 17, 21.
But the act of Congress of March 3, 1875, for the admission of Colorado into the Union, authorized the inhabitants of the Territory “to form for themselves out of said Territory a State government with the name of the State of Colorado, which State, when formed, shall be admitted into the Union upon an equal footing with the original States in all respects whatsoever;” and the act contains no exception of the Ute reservation, or of jurisdiction over it. (18 Stat., 474.) The provision of the subsequent act of June 26, 1876, Sec. 1, 19 Stat., 61, that upon the admission of the State of Colorado into the Union, “the laws of the United States, not locally inapplicable, shall have the same force and effect within the State as elsewhere within the United States,” does not create any such exception. Such a provision has a less extensive effect within the limits of one of the States of the Union than in one of the Territories of which the United States have sole and exclusive jurisdiction.
The act of March 3, 1875, necessarily repeals the provisions of any prior statute, or of any existing treaty, which are clearly inconsistent therewith. {Case of the Cherokee Tobacco, 11 Wall., 616.) Whenever, upon the admission of a State into the Union, Congress has intended to except out of it an Indian reservation, or the sole and exclusive jurisdiction over that reservation, it has done so by express words. (Case of the Kansas Indians, 5 Wall., 737; United States v. Ward, 1 Woolworth, 17.) The State of Colorado, by its admission into the Union by Congress, upon an equal footing with the original States in all respects whatever, without any such exception as had been made in the treaty with the Ute Indians, and in the act establishing a territorial government has acquired criminal jurisdiction over its own citizens and other white persons throughout the whole of the territory within its limits, including the Ute reservation, and that reservation is no longer within the sole and exclusive jurisdiction of the United States. The Courts of the United States have therefore no jurisdiction to punish crimes within that reservation, unless so far *381 as may be necessary to carry out such provisions of the treaty with the Ute Indians as remain in force. But that treaty contains no stipulation for the punishment of offences committed by white men against white men. It follows that the Circuit Court of the United States for the District of Colorado has no jurisdiction of this indictment, but, according to the practice heretofore adopted in like cases, should deliver up the prisoner to the authorities of the State of Colorado to be dealt with according to law. United States v. Cisna, 1 McLean, 254, 265; Coleman v. Tennessee, 97 U. S., 509, 519.
Attorney-General, for United States.
Browne &■ Putnam, for defendant.
The record before us presents no question under the provisions of the treaty as to the punishment of crimes committed by or against Indians, the protection of the Indians in their improvements, or the regulation by Congress of the alienation and descent of property, and the government and internal police of the Indians. The single question that we do or can decide in this case is that stated in the certificate of division of opinion, namely, whether the Circuit Court of the United States for the District of Colorado has jurisdiction of the crime of murder committed by a white man upon a white man within the. Ute reservation and within the limits of the State of Colorado; and for the reasons above given that question must be

Answered in the negative.