## UNITED STATES *v.* MONTE.

Filed February 6, 1884.

1. FEDERAL COURTS—JURISDICTION—MURDER—INDIAN COUNTRY.
Under Rev. St. U. S. § 2145, extending the criminal jurisdiction of the United
States to offenses committed in "Indian country," the district court in a territory
will take jurisdiction of a homicide on an Indian reservation, within the territory,
on the United States side of the court, as a federal court, to the exclusion of ter-
ritorial jurisdiction, and the prosecution is properly conducted in the name of
the United States.

2. SAME—EXCEPTIONS—TREATY.
Where such homicide is committed by an uncivilized Mescalero Apache Indian
on a white man, the case does not fall within any of the exceptions to the juris-
diction of the United States contained in Rev. St. U. S. § 2146, nor is there any
provision in the treaty with the Apaches, of July 1, 1852, (10 U. S. St. 979,) put-
ting such an offense within the tribal jurisdiction of the Indians.

*G. W. Prichard,* U. S. Atty., for the United States.

BELL, J.   The defendant in the court below, and the appellant
here, was indicted, tried, and convicted in the district court for the
Third judicial district, for the crime of murder, and the case has
been brought into this court for review upon a record which presents
only one material exception, namely, to the decision of the court be-
low overruling a plea to its jurisdiction. The indictment was found
in the name of the United States and on the United States side of
the district court, that is, the branch of the court sitting for the trial
of causes arising under the constitution and laws of the United
States throughout the whole district, as distinguished from causes hav-
ing no reference to the laws of the United States, the venue for which
is laid in the several counties composing the district.   From the facts
presented to us by the record, it appears that the defendant is an un-
civilized Mescalero Apache Indian; that the homicide was commit-
ted on the Mescalero Apache Indian reservation, in the Third judicial
district of this territory; and that the person killed was a white man,
and not an Indian.   We understand the defendant's position to be
that the United States have not exclusive jurisdiction of the case,
and that therefore the prosecution should be in the name of the ter-
ritory, and disposed of on the territorial side of the court, or be dis-
posed of by the Indians themselves to whose tribe the defendant be-
longs.   While the territorial district courts, for the purposes of the
United States cases, possess all the jurisdiction of circuit and district
courts of the United States, still that jurisdiction is strictly statu-
tory, either as regards the nature of the case or locality in which it
arises.   This applies to criminal as well as civil cases, and an in-

dictment for murder committed within the territory lies in the name of the territory, and is to be tried in the territorial, as distinguished from the United States, side of the district court, unless the case falls within a statutory provision which would give the courts of the United States jurisdiction thereof.

The crime of murder is within the jurisdiction of the United States, when committed within any place or district of country under the exclusive jurisdiction of the United States. U. S. Rev. St. § 5339. And "the jurisdiction vested in the courts of the United States * * * shall be exclusive of the courts of the several states of all crimes and offenses cognizable under the authority of the United States." Id. § 711.

For the purposes of this case, the words "in places under the exclusive jurisdiction of the United States," extend to and include the Indian country. U. S. Rev. St. § 2145. It has been held by the supreme court of the United States at its last term, (October, 1883,) in *Ex parte Kan-gi-Shun-ca,* 3 Sup. Ct. Rep. 396, that the term "Indian country" includes Indian reservations situated within the geographical limits of existing territories; that the United States has jurisdiction of the crime of murder committed within such reservations; and that an indictment for such offense is triable in the United States, as distinguished from the territorial, branch of the district court, for the judicial district of the territory within the boundaries of which the reservation in question is situated.

The decision of the supreme court referred to, set forth in an opinion by Mr. Justice MATTHEWS, not yet appearing in the official reports, is of such interest and importance in connection with the administration of justice in the territories that it seems advisable to quote at length the portion relating to the question now under consideration:

"The district courts of the territory of Dakota are invested with the same jurisdiction in all cases arising under the laws of the United States as is vested in the circuit and district courts of the United States. Rev. St. §§ 1907–1910. The reservation of the Sioux Indians, lying within the exterior boundaries of the territory of Dakota, was defined by article 11 of the treaty concluded April 29, 1868, (15 St. 635;) and by section 1889, Rev. St., it is excepted out of and constitutes no part of that territory. The object of this exception is stated to be to exclude the jurisdiction of any state or territorial government over Indians within its exterior lines, without their consent, where their rights have been reserved and remain unextinguished by treaty. But the district courts of the territory having, by law, the jurisdiction of district and circuit courts of the United States, may, in that character, take cognizance of offenses against the laws of the United States, although committed within an Indian reservation, when the latter is situate within the space which is constituted by the authority of the territorial government the judicial district of such court. If the land reserved for the exclusive occupancy of Indians lies outside the exterior boundaries of any organized territorial government, it would require an act of congress to attach it to a judicial district, of which there are many instances, the latest being the act of Janu-

ary 6, 1883, by which a part of the Indian Territory was attached to the district of Kansas, and a part to the Northern district of Texas. 22 St. 400. In the present case, the Sioux reservation is within the geographical limits of the territory of Dakota; and being excepted out of it only in respect to the territorial government, the district court of that territory, within the geographical boundaries of whose district it lies, may exercise jurisdiction under the laws of the United States over offenses made punishable by them committed within its limits, *U. S.* v. *Dawson*, 15 How. 467; *U. S.* v. *Jackalow*, 1 Black, 484; *U. S.* v. *Rogers*, 4 How. 567; *U. S.* v. *Alberty*, Hemp. 444, opinion by Mr. Justice DANIEL; *U. S.* v. *Starr*, Id. 469; *U. S.* v. *Ta-wan-ga-ca*, Id. 304. The district court has two distinct jurisdictions. As a territorial court, it administers the local law of the territorial government; as invested by act of congress with jurisdiction to administer the laws of the United States, it has all the authority of circuit and district courts; so that, in the former character, it may try a prisoner for murder committed in the territory proper, under the local law, which requires the jury to determine whether the punishment shall be death or imprisonment for life, (Laws Dakota, 1883, *c.* 9;) and, in the other character, try another for a murder committed within the Indian reservation, under the law of the United States, which imposes, in case of conviction, the penalty of death.

"Section 2145 of the Revised Statutes extends the general laws of the United States as to the punishment of crimes committed in any place within their sole and exclusive jurisdiction, except the District of Columbia, to the Indian country, and it becomes necessary, therefore, to inquire whether the locality of the homicide, for which the prisoner was convicted of murder, is within that description.

"The first section of the Indian intercourse act of June 30, 1834, defines the Indian country as follows:

"'That all that part of the United States west of the Mississippi, and not within the states of Missouri and Louisiana or the territory of Arkansas, and also that part of the United States east of the Mississippi river not within any state to which the Indian title has not been extinguished, for the purposes of this act, be taken and be deemed to be the Indian country.'

"Since the passage of that act great changes have taken place by the acquisition of new territory, by the creation of new states, and by the organization of territorial governments; and the Revised Statutes, while retaining the substance of many important provisions of the act of 1834, with amendments and additions since made regulating intercourse with the Indian tribes, has nevertheless omitted all definition of what must now be taken to be the 'Indian country.' Nevertheless, although the section of the act of 1834 containing the definition of that date has been repealed, it is not to be regarded as if it never had been adopted, but may be referred to in connection with the provisions of its original context which remain in force, and may be considered in connection with the changes which have taken place in our situation, with a view of determining from time to time what must be regarded as Indian country where it is spoken of in the statutes. It is an admitted rule, in the interpretation of statutes, that clauses which have been repealed may still be considered in construing the provisions that remain in force. BRAMWELL, L. J., in *Atty. Gen.* v. *Lamplough*, 3 Exch. Div. 223–227; Hardc. St. 217; *Sav. Bank* v. *Collector*, 3 Wall. 495, 513; *Com.* v. *Bailey*, 13 Allen, 541. This rule was applied in reference to the very question now under consideration in *Bates* v. *Clark*, 95 U. S. 204, decided at the October term, 1877. It was said, in that case, by Mr. Justice MILLER, delivering the opinion of the court, that 'it follows from this that all the country described by the act of 1834 as Indian country remains Indian country so long as the Indians retain their original title to the soil, and ceases to be Indian country whenever they lose that title, in the absence of any different provision by treaty or act of congress.'

UNITED STATES v. MONTE.

In our opinion that definition now applies to all the country to which the Indian title has not been extinguished within the limits of the United States, even when not within a reservation expressly set apart for the exclusive occupancy of Indians, although much of it has been acquired since the passage of the act of 1834, and notwithstanding the formal definition of that act has been dropped from the statutes, excluding, however, any territory embraced within the exterior geographical limits of a state not excepted from its jurisdiction by treaty or by statute at the time of its admission into the Union, but saving, even in respect to territory not thus excepted and actually in the exclusive occupancy of Indians, the authority of congress over it, under the constitutional power to regulate commerce with the Indian tribes, and under any treaty made in pursuance of it.  *U. S.* v. *McBratney*, 104 U. S. 621.   This definition, though not now expressed in the Revised Statutes, is implied in all those provisions, most of which were originally connected with it when first enacted, and which still refer to it.   It would be otherwise impossible to explain these references, or give effect to the most important provisions of existing legislation for the government of Indian country.   It follows that. the *locus in quo* of the alleged offense is within Indian country, over which, territorially, the district court of the First judicial district of Dakota, sitting. with the authority of a circuit court of the United States, had jurisdiction."

It is to be noticed, also, that the terms "Indian country" and "reservation" seem to be used indiscriminately and synonymously in the statutes relating to the Indians, and that all laws regulating trade and intercourse with the Indian tribes were extended over the Indian tribes in the territory of New Mexico by the act of the twenty-seventh of February, 1851, (9 U. S. St. 587.)   The only limitation to the jurisdiction of territorial district courts, sitting as United States. courts, over crimes committed on Indian reservations, is contained. in section 2146 of the Revised Statutes of the United States, which. is as follows:

"The preceding section (section 2145, extending the jurisdiction of the United States to the Indian country) shall not be construed to extend to. crimes committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where by treaty stipulations the exclusive jurisdiction over such offense is, or may be, secured to the Indian tribes respectively."

The exception of crimes "committed by one Indian against the person of another Indian" does not apply to the present case, as the person killed by the defendant was a "white person," as it appears. by the record; that is, was not an Indian.   The exception of an offense committed by an Indian "who has been punished by the local law of the tribe" is not urged in the present case, nor is anything: cited or shown to support this exception.

There is therefore left for our consideration only the third exception, namely, "cases where by treaty stipulations the exclusive jurisdiction over such offenses is, or may be, secured to the Indian tribes respectively."   The only treaty with the tribe in question— the Apaches—which can bear upon the point was made at Santa Fe on July 1, 1852, and is found in 10 U. S. St. 979.   Articles 1, 4, and 6 of this treaty are as follows:

v.3 N. M.—9

Article 1. "Said nation or tribe of Indians, through their authorized chiefs aforesaid, do hereby acknowledge and declare that they are lawfully and exclusively under the laws, jurisdiction, and government of the United States of America, and to its power and authority they do hereby submit."

Art. 4. "All said nation or tribe of Indians hereby bind themselves to refer all cases of aggression against themselves or their property and territory to the government of the United States for adjustment, and to conform in all things to the laws, rules, and regulations of said government in regard to the Indian tribes."

Art. 6. "Should any citizen of the United States, or other person or persons subject to the laws of the United States, murder, rob, or otherwise maltreat any Apache Indian or Indians, he, or they, shall be arrested and tried, and, upon conviction, shall be subject to all the penalties provided by law for the protection of the persons and property of the people of the said states."

These are the only treaty stipulations in reference to the subject under consideration, and there is nothing in any of them tending to secure exclusive jurisdiction over any offense to the Indians themselves. This was a treaty made with the "whole Apache nation of Indians situate and living within the limits of the United States." See preamble and treaty. We are not aware that a stipulation can be found in any treaty with Indians giving them jurisdiction over an offense committed by one of their number against a white person. In all treaties of such character which pretend to be complete there are provisions to the effect that the Indian committing such an offense shall be delivered up by his fellow-Indians to the United States, to be tried and punished by its laws. See the treaty with the Sioux tribe, commented on in *Ex parte Kan-gi-Shun-ca, supra,* and with the Navajos, made at Fort Sumner, June 1, 1868, (15 St. 667.) Nor can it be supposed that the government would ever leave the punishment of a crime committed by an uncivilized Indian upon a white person to the exclusive jurisdiction of his fellow-Indians. This exception, however, has lost all force as regards the future, as, by the act of March 3, 1871, it is provided "that no Indian nation, or tribe, within the territory of the United States, shall be acknowledged or recognized as an independent nation, tribe, or power, with whom the United States may contract by treaty." Rev. St. § 2079.

It is therefore our opinion that the United States branch of the district court had exclusive jurisdiction of the crime alleged in the indictment, and proved in the case, and that the judgment of the court below must be affirmed.

AXTELL, C. J.   I concur.