# HENRY C. STIFF, APPELLANT, v. H. W. M'LAUGHLIN, SHERIFF, RESPONDENT.

[Submitted March 12, 1897.   Decided March 22, 1897.]

*Indian Reservation—Levy of Execution—Right of Entry— Consent of Agent.*

Entry on Indian lands by an officer to levy an execution issued by a state court on property of one not an Indian, but residing on the Indian land by consent of the tribe, is not interdicted by the provision of the enabling act of Montana that all Indian lands in the state "shall remain under the absolute jurisdiction and control of the Congress of the United States."

One not an Indian acquires no tribal relations by marriage with an Indian woman and residence on a reservation.

The provision of article 2 of the treaty of 1855 with the Flathead Indians, that there might be placed on their reservation "other friendly bands of Indians of the Territory of Washington," who might agree to be consolidated with the Flathead Nation, does not authorize the adoption into the tribe of a quarter-breed Chippewa, who is married to a Flathead woman.

The fact that a man is permitted by the United States authorities to reside on a reservation with his Indian wife does not raise a presumption that the government intended he should acquire the *status* of a tribal Indian.

A refusal of an Indian agent to consent to entry by a sheriff on the reservation to levy execution on the property of one not an Indian does not excuse the sheriff from making the levy.

Advice of a United States district attorney that the sheriff had no right to enter the reservation without the agent's consent does not excuse the sheriff from making the levy.

*Appeal from District Court, Missoula County. F. H. Woody, Judge.*

ACTION by Henry C. Stiff against H. W. McLaughlin, sheriff of Missoula county, and others. There was judgment for defendants on the pleadings, and the plaintiff appeals. Reversed.

Statement of the case by the justice delivering the opinion.

Appellant (plaintiff below) on July 2, 1895, caused an execution to be issued on a judgment in force against one Sloan, and delivered it to the sheriff of Missoula county, requesting him to levy upon certain personal property belonging to Sloan, a list of which he furnished that officer at

the same time. The property consisted of cattle, horses, harness, wagons, and agricultural implements in the possession of Sloan near Mud Creek, on the Flathead Indian reservation, in Missoula county, Montana. The sheriff refused to make the levy, and subsequently appellant instituted the present suit against him and his bondsmen to recover damages alleged to have been sustained by said failure and refusal to make the levy. The answer of respondents (defendants below) contains no denial of the allegation of the complaint, but seeks to justify the refusal of the sheriff to make this levy. It alleges : "That the said Allen Sloan, upon whose property he (the sheriff) was directed to levy said execution, is a Chippewa Indian of the quarter blood; that he is married to an Indian woman belonging to the Flathead tribe of Indians; that at all the times mentioned in the complaint, and for many years prior thereto, the said Sloan and his wife resided and still reside upon the Flathead Indian reservation in the state of Montana, and that his right to so reside upon said Indian reservation has been and is recognized and allowed by the authorities of the United States in charge of and having jurisdiction over said Flathead Indian reservation; that all the property of said Sloan upon which said defendant was directed to levy said execution was, at all the times mentioned in said complaint, upon said Flathead Indian reservation.'' It is also alleged that the sheriff applied to the Indian agent in charge of said Flathead Indian reservation, and to the United States district attorney for the district of Montana, for permission to enter upon the reservation and make the levy, and that the said Indian agent refused such permission, and the said district attorney advised that he (the sheriff) had no authority to enter upon the reservation for the purpose of making the levy. The treaty entered into between the United States and the Flathead, Kootenay and Upper Pend d'Oreilles Indians, on July 16, 1855, and proclaimed April 18, 1859, contains the following provision : "Article 2. There is, however, reserved from the lands above ceded, for the use and occupation of the said confederated tribes, and as a general Indian reservation, upon which may

be placed other friendly tribes and bands of Indians of the Territory of Washington who may agree to be consolidated with the tribes parties to this treaty, under the common designation of the 'Flathead Nation,' with Victor, head chief of the Flathead tribe, as the head chief of the Nation, the tract of land included within the following boundaries : * * * Nor shall any white man, excepting those in the employment of the Indian Department, be permitted to reside upon the said reservation without the permission of the confederated tribes, and the superintendent and agent.'' The court below denied appellant's motion for judgment on the pleadings, but rendered judgment on the pleadings in favor of respondents, and the appeal is from said judgment.

*Bickford, Stiff & Hershey*, for Appellant.

*F. C. Webster*, for Respondents.

BUCK, J.—The case of *Draper* v. *United States* (recently decided by the supreme court of the United States) 17 Sup. Ct. 107, in our opinion, disposes of this appeal. The facts in that case were that Draper, a negro, murdered a negro woman on the Crow reservation, which is within the boundaries of Custer county, Montana. He was indicted and convicted in the circuit court of the United States for the district of Montana. The supreme court holds that said circuit court had no jurisdiction of the crime, following *United States* v. *McBratney*, 104 U. S. 621. The Draper opinion discusses the legislation organizing the Territory of Montana, the enabling act of congress admitting Montana as a state, and the ordinance adopted by the Montana constitutional convention providing : ''And said Indian lands shall remain under the absolute jurisdiction and control of the congress of the United States,'' etc. It also reviews the provision of the treaty with the Crow Indians, and the various acts of congress as to Indians and Indian reservations, and the decisions of the United States courts pertinent to the question of jurisdiction of state and United States courts over Indian reservations. It is unnecessary,

therefore, for us to recapitulate the reasoning from which the conclusions of law in the McBratney and Draper decisions, *supra*, were reached. In the McBratney case is the following language : "The record before us presents no question under the provisions of the treaty as to the punishment of crimes committed by or against Indians, the protection of the Indians in their improvements, or the regulation of congress of the alienation and descent of property and the government and in-ternal police of the Indians. The single question that we can or do decide in this case is that stated in the certificate of division of opinion, namely, whether the circuit court of the United States for the district of Colorado has jurisdiction of the crime of murder committed by a white man upon a white man within the Ute reservation, and within the limits of the State of Colorado; and, for the reasons above given, that ques-tion must be answered in the negative." In the Draper case the court said : "Of course the construction of the enabling act (of Montana) here given is confined exclusively to the issue before us, and therefore involves in no way any of the questions fully reserved in *United States* v. *McBratney*, and which are also intended to be fully reserved here." There is noth-ing in the treaty between the United States and the Flathead Indians to except the Flathead Indian reservation from the law as to the jurisdiction of the state courts of Montana laid down in the Draper decision with reference to the Crow reserva-tion.

Counsel for respondents say in their brief : "At the time the answer was drawn in this case, and the motion for judg-ment on the pleadings was argued, the respondents relied largely on the decisions of United States District Judge Knowles in cases before him (*United States* v. *Partello*, 48 Fed. 670; *Truscott* v. *Cattle Co.*, 73 Fed. 60), in which he had decided, in effect, that state officers had no jurisdiction or right to enter upon Indian reservations in Montana to exe-cute process issued out of state courts. While this principle has been limited, and to some extent overruled, in recent de-cisions of the court of appeals at San Francisco (see *Truscott*·

*v. Cattle Co.*, *supra*), and by the recent decision of the supreme court of the United States in the Draper case, we believe still that this is the law governing the facts involved in this case. While the answer was drawn under the view that the officer had no right to levy an execution from a state court on property on an Indian reservation in any case, still, happily, the answer sets up certain facts, namely, those alleging the tribal relations of the judgment debtor Sloan to the United States and the confederated tribes of Indians on the Flathead reservation, which clearly show that the respondent sheriff had no jurisdiction to execute the particular process mentioned in the pleadings in this action. The sheriff had no jurisdiction to go upon the reservation, and violate and disturb such tribal relations, without the consent of the proper officers of the United States who are the guardians of such Indians. The answer sufficiently shows by the facts stated that Sloan, the judgment debtor, was an Indian ward of the United States government, sustaining tribal relations to the Flathead tribe of Indians, and affiliated to them, and lawfully residing on said Flathead reservation with his property there; and we still contend that the sheriff, under the circumstances, had no right to go upon said reservation, and levy the execution upon said Indian's property." The allegations in their answer relied upon by respondents' counsel appear in the statement. From these allegations, simmered down, it appears that Sloan, the judgment debtor, was a quarter breed (not an Indian) married to a Flathead Indian woman, and residing with her on the Flathead Indian reservation by the permission of the Flathead Indians and the United States authorities. The only language in the Flathead treaty, from which it can be even remotely inferred that the Flathead and the other confederated tribes on the Flathead reservation had the right to adopt Sloan into their tribe and invest him with the privileges and immunities enjoyed by themselves as tribal Indians, is set forth in the statement. But clearly this language of the treaty admits of no such inference. It provides, perhaps, for the adoption into their tribe of friendly tribes and bands of Indians of

Washington Territory. But the Indian blood in Sloan was Chippewa. He was exactly in the same position as if he had had no Indian blood in him at all. The marriage of a man not an Indian to an Indian woman does not give him the status of a tribal Indian, nor does he acquire such a status from the fact that he resides upon an Indian reservation with an Indian wife. Unless in the government's treaty with the Flathead Indians themselves, or under some act of congress, a right was expressly given the Flathead Indians to adopt persons other than tribal Indians of Washington territory into their tribe, no court would be justified in holding that any such right existed. Their treaty gave no such right to the Flatheads as we have stated, and we know of no law conferring any such right. Nor from the fact that the United States authorities permitted Sloan to reside on the reservation can it be reasonably inferred that he had acquired, or that it was intended by the government that he should acquire, the status of a tribal Indian. We cannot agree with this contention of respondents' counsel. It is conceded that the property which the sheriff refused to levy upon was personal property. Sloan, the owner, was not a tribal Indian. By going upon the Flathead Indian reservation, and taking Sloan's personal property into his custody, the sheriff would not, in our opinion, have necessarily interfered with the Indians themselves, or infringed upon their rights as a tribe under their treaty. The refusal of the Indian agent to grant permission to the sheriff to enter the reservation is no justification of the failure to levy the execution. The agent had no right to refuse such permission. Nor was the advice given the sheriff by the United States district attorney any excuse for said sheriff's failure to perform a duty enjoined upon him by the laws of Montana. We are of the opinion that the court erred in giving judgment on the pleadings for the respondents. The judgment is reversed, and the cause remanded, with direction to the court below to render judgment on the pleadings in favor of appellant.

*Reversed.*

HUNT, J., concurs. PEMBERTON, C. J., not sitting.