## In re TERRILL.

(Circuit Court of Appeals, Eighth Circuit. March 20, 1906.)

No. 63.

**1. HABEAS CORPUS—FUNCTION OF WRIT.**

The writ of habeas corpus is not available to review errors of the court in the trial of petitioner nor irregularities that may have arisen in the proceedings resulting in his conviction.

[Ed. Note.—For cases in point, see vol. 25, Cent. Dig. Habeas Corpus, § 25.]

**2. SAME—SCOPE OF INQUIRY—JURISDICTIONAL QUESTIONS.**

On an application for a writ of habeas corpus sued out of the federal Circuit Court of Appeals, on the ground that the petitioner is deprived of his liberty without due process of law, the court is limited to a consideration of whether the court that convicted petitioner had jurisdiction of the offense and of the prisoner, whether it acted within such jurisdiction, and whether petitioner is held by authority of law derived from such court at the time the writ was issued.

[Ed. Note.—For cases in point, see vol. 25, Cent. Dig. Habeas Corpus, §§ 81, 82.]

**3. CRIMINAL LAW—JURISDICTION—TERRITORIAL COURTS.**

Under the organic act of Oklahoma territory, passed May 2, 1890, granting jurisdiction to Oklahoma courts to try and condemn for violations of both federal and state laws committed within such territory, such courts had jurisdiction of a territorial offense committed on an acre of ground reserved for governmental use and control by presidential proclamation March 23, 1889.

**4. SAME.**

Under Organic Act Okl. May 2, 1890, providing that the judicial power of the territory shall be vested in the Supreme Court, district courts, and other courts, and conferring on such courts jurisdiction to try all charges for violations of laws of the territory, and that each dis-

trict court shall have and exercise, exclusive of any court heretofore established, the same jurisdiction in all cases arising under the Constitution and laws of the United States as is vested in the Circuit and District Courts of the United States, the court established by such grant was vested with power to try all offenses within the territorial jurisdiction for violations of the laws of the territory, and also for violations of the laws of the United States, and it was therefore immaterial that it was improperly named a United States District Court.

5. SAME—TRANSFER OF CAUSE.

A district court of the territory of Oklahoma has power to transfer a criminal prosecution pending therein to a county in any judicial district in the territory which it selects for trial.

6. SAME—ORDER—FILING.

Where the venue of a criminal prosecution was changed, the court of the county to which the venue was changed acquired jurisdiction by the making of the order, and hence the fact that a copy of the necessary papers was not filed in such court, as required by statute did not deprive it of jurisdiction.

7. SAME—RECORD—FAILURE TO COMPLETE.

Failure of a court after trial and conviction to make a complete record, as required by statute, did not detract from the jurisdiction of the court to try the accused.

8. HABEAS CORPUS—INCARCERATION—PLACE—MODE—REVIEW.

On a writ of habeas corpus issued on the alleged ground that petitioner was confined without due process of law, whether the petitioner was properly confined in one penitentiary or another, whether he was properly treated, was required to serve at hard labor, or the courses that had been pursued in the past, with reference to him were immaterial.

9. INSANE PERSONS—PRISONERS—TRANSFER FROM PENITENTIARY.

Where, after the incarceration of a prisoner in the Kansas penitentiary under a commitment by a court of the territory of Oklahoma, the prison board or physicians declared him insane, the Governor of the territory was thereupon authorized to order the sheriff to return him to the county jail in Oklahoma, under St. Okl. 1893, § 5485, providing that no person committed to prison shall be removed therefrom or from custody into any other prison or other custody, unless on a writ of habeas corpus or some other legal writ, except his removal is excused by specified conditions "or other necessity."

10. PRISONS—REDUCTION OF TERM OF IMPRISONMENT—PRISON BOARD—CONCLUSIVENESS OF DETERMINATION.

Where, under the rules of a prison, the prison board had authority to determine how much good time should be allowed to prisoners, and, after such time had been allowed, to take it from them for insubordination or other causes specified in the rules, the determination of the board, withdrawing good time allowed to a prisoner, is conclusive on the court, in a subsequent habeas corpus proceeding to obtain the prisoner's discharge on the ground that his incarceration was without due process of law.

11. HABEAS CORPUS—RECORD—PRESUMPTIONS.

Where, on habeas corpus to obtain a prisoner's discharge for incarceration without due process of law, the record did not disclose that the prisoner was insane at the time when the insubordination for which the prison board found him guilty, and for which they deprived him of 590 days good time, he was not entitled to an allowance of such good time, on the ground that he could not be guilty of insubordination while insane; the presumption being that he became insane subsequent to the insubordination.

On Application for a Writ of Habeas Corpus.

Ira N. Terrill, pro se.

P. C. Simons, Atty. Gen., for respondent.

Before SANBORN and ADAMS, Circuit Judges.

SANBORN, Circuit Judge, orally announced the opinion of the court.

The prisoner seeks a discharge by a writ of habeas corpus from imprisonment in the jail at Perry in the territory of Oklahoma. He is held under a commitment issued by the district court of the territory of Oklahoma for the county of Noble, which recites that he was convicted on December 14, 1894, of the murder of one Embry on January 3, 1891. The function of a writ of habeas corpus is not to review the errors of the court that tried the prisoner, nor the irregularities that may have arisen in the proceedings resulting in his conviction. The prisoner was convicted for a violation of a law. of the territory of Oklahoma, and not for the violation of any law of the United States. Section 753 of the Revised Statutes [U. S. Comp. St. 1901, p. 592], prohibits the national courts from releasing a prisoner thus convicted, except for a violation of a treaty, a law of the United States, or the Constitution of the United States. It is not claimed that there is any violation of any law of the United States or of any treaty of the United States by the incarceration of the prisoner. The only ground upon which he may have relief in this court is that he is confined in violation of that section of the Constitution which forbids the deprivation of life, liberty, or property without due process of law. In determining whether or not the prisoner is confined by due process of law, this court is limited by the decisions of the Supreme Court to the consideration of the two questions: Had the court that convicted the prisoner jurisdiction of the offense and of the prisoner, and did it act within its jurisdiction? And, second, is he now held by authority of law derived from that court?

The first claim of the petitioner is that the court which convicted him had no jurisdiction of the offense, because it was committed upon the government acre which is reserved by the proclamation of the President of March 23, 1889, in these words: "Which last described two acres are hereby reserved for government use and control." This reservation, however, is by a proclamation of the President. By the organic act of the territory of Oklahoma, which had been passed on May 2, 1890, jurisdiction was granted to the courts of Oklahoma to try and condemn for violations of both the federal and state laws committed not only upon other portions of this territory, but also upon the two acres to which reference is made in this proclamation. The courts of Oklahoma territory had jurisdiction of this offense, although it was committed upon this government acre, then, because that jurisdiction was granted to them by the act of Congress, and it could not be withdrawn from them by any act of the President. There is another reason why the courts of that territory had jurisdiction, and that is that the words of the reservation are insufficient to retain exclusive jurisdiction over the acre in the courts or the jurisprudence of the United States. This question was decided by the Supreme Court in U. S. v. McBratney, 104 U. S. 621, 26 L. Ed. 869, and Draper v. U. S., 164 U. S. 240, 17 Sup. Ct. 107, 41 L. Ed. 419, where it was held that a declaration of Congress that "Indian lands shall remain under the absolute jurisdiction and

control of the United States" was not sufficient to withdraw or retain them without the jurisdiction of the state.

The second objection to the jurisdiction of the court and its power to issue the commitment is that the records of the various sessions of the courts which acted upon the charge against the prisoner from the time that the original indictment was found, down to the close of the trial, show that the court which convened and the court which adjourned was the United States District Court for the respective counties of the territory. This is exemplified by the proceedings in the court in which the indictment was found, where it appears that the United States District Court convened, the United States District Court adjourned from time to time, and during a session of the United States District Court the grand jury, which had apparently been impaneled to inquire into violations of laws of the territory, was sworn as a grand jury to inquire into violations of laws of the United States. It is said that there was no jurisdiction to try and convict the defendant, because there was no court of the territory of Oklahoma in session during these proceedings. The organic act of the territory provides that the judicial power of the territory shall be vested in the Supreme Court, district courts and other courts. It gives to these courts jurisdiction to try all charges for violations of laws of the territory and adds:

"Each of said district courts shall have and exercise, exclusive of any court heretofore established, the same jurisdiction in all cases arising under the Constitution and laws of the United States as is vested in the Circuit and District Courts of the United States."

The result of this grant was that a single court created by the appointment of a judge by the President of the United States, confirmed by the Senate of the United States, and by the appointment or election of a clerk and a sheriff, was vested with the power to try all offenses within its territorial jurisdiction for violations of the laws of the territory, and also for violations of the laws of the United States. It was not a United States District Court in the sense that that title is used in the states, because it did not obtain any of the judicial power specified in article 3 of the Constitution of the United States. It seems to be considered that the title of this court conditions its power. But its jurisdiction is not conditioned by its title. It is conditioned by the grant of its power and its exercise of that grant. That tribunal duly organized had the power to try offenders for violations of the laws of the territory and of the United States. The limit of its power was that it might not under a charge of a violation of a law of the United States try a prisoner for the violation of a law of the territory; neither could it, upon a charge of a violation of a law of the territory, try a prisoner for a violation of the law of the United States. When the charge against the offender was presented to the court in Logan county, it was sitting under the title of the United States District Court for Logan county. A grand jury had been sworn to inquire into violations of the laws of the territory and of the laws of the United States. It had the power to call a jury and to impose oaths for an inquisition into offenses against both sets

of laws, and it is impossible to see how there could have been any failure of jurisdiction or power because this court was called by one title or by another. The conclusion upon this branch of the case is that the territorial court provided by the organic act, by whatever name it might be called, had ample power to try the prisoner for any offense against the laws of the United States, or against the laws of the territory, and that, if he was properly charged with an offense either against the laws of the United States or of the territory of Oklahoma, the court had jurisdiction to try him for that offense, and it was immaterial by what title the court convened, adjourned, or acted.

The question which has now been disposed of clears from the case the objections to the indictment, to the trial, to the conviction, and to the sentence, because the record conclusively shows that the prisoner was charged with an offense against the law of the territory, that he appeared by counsel, announced himself ready for trial, a jury was called and sworn to try that offense, he was tried for it, convicted, and committed to the penitentiary in Kansas, so that there remain only the irregularities to which reference has not been made, and which will now be briefly noticed.

It is said that the court of Noble county had no jurisdiction because it was in another judicial district. But an examination of the statutes has satisfied us that the power was given to the court in Logan county to transfer the case to a county in any judicial district in the territory which it selected.

It is said that there was no jurisdiction in the court in Noble county because the order which changed the venue of the case from Logan county to Noble county was not filed before the trial of the case in the county of Noble. But it was not the filing of the order or of a copy of it which gave jurisdiction to the Noble county court. It was the fact that the order was made, and as that fact is conclusively proved, although there was a failure to comply with a law of the territory of Oklahoma, in that a copy of the necessary papers was not filed in Noble county, the latter fact did not detract from the jurisdiction of the court.

There is a certificate in evidence that the complete record which is required by the statute of Oklahoma to be prepared after a trial and conviction never was made, or, if made, that it has disappeared from the files of Noble county. But, like the order for the change of venue, this record did not condition the jurisdiction of the court in Noble county to try the prisoner because it was only after the trial and conviction that this record could be made.

There are other minor irregularities in the proceedings in the territory, but none which deserve extended notice. Our conclusion, after examining the statutes of the territory and the authorities upon the question, is that there was ample jurisdiction in the court in Logan county to find the indictment and in the court in Noble county to try and convict the prisoner, and that he may not be discharged because of any lack of jurisdiction in those courts.

The prisoner was sentenced to serve a term of 12 years in the penitentiary at Lansing in the state of Kansas. It is said that there

was no power in the territory of Oklahoma to make a contract whereby a prisoner could be confined in the state of Kansas. It is immaterial to the decision of the question presented by this writ of habeas corpus whether or not the prisoner was properly confined in that penitentiary, was properly treated, was required to serve at hard labor, or what course may have been pursued in the past. The question here is simply: Is he now held in violation of the Constitution of the United States? His past injuries and wrongs, if there be such, can be remedied only by a different proceeding and in another court. This court is without jurisdiction to consider them. A contract was made in the year 1905 between the territory of Oklahoma and the state of Kansas, the terms of which briefly were that the state of Kansas should detain the prisoners of the territory of Oklahoma for certain compensation, and that they might be returned to the territory when any of them became insane. At the time this contract was made the prisoner was in the penitentiary at Lansing. The prison board, or the physicians who were authorized to pass upon the question of the sanity of the prisoner, declared him insane. Thereupon the Governor of the territory of Oklahoma issued an executive order to the sheriff of Noble county to take the prisoner from the Kansas penitentiary and return him to the jail in Noble county. It is said that this executive order was unauthorized, and our attention is called to section 5485 of the Statutes of Oklahoma of 1893. This section provides that no person committed to prison shall be removed therefrom or from custody into any other prison or other custody, unless it be by a writ of habeas corpus or some other legal writ, except his removal is excused by specified conditions "or other necessity," and that in such cases the sheriff shall commit the prisoner to the jail in the adjoining county. Upon full consideration of the provisions of that statute in the light of the contract, the court is of the opinion that the words "or other necessity" were sufficient to include this case, and that the section empowered the Governor of the territory of Oklahoma to remove this prisoner from the penitentiary at Lansing, when it appeared that pursuant to the contract the authorities of the prison were entitled to have him returned to the territory, because they had adjudged him insane. There was therefore authority under this executive order and the commitment for the sheriff to obtain the prisoner from the Lansing penitentiary and confine him in the jail at Perry in Oklahoma territory.

Finally, it is said that the prison term has expired. He was sentenced to imprisonment for 12 years. Under the rules of the prison at Lansing he would have been entitled to a certain amount of good time, which, if allowed to him, would have reduced his term so that now it would have passed. But those rules provided that the prison board had authority to determine how much good time should be allowed to prisoners, and after such time had been allowed to them to take it from them for insubordination or for other causes specified in the rules. It is conceded that the prison board of that prison did take from the good time of the petitioner 590 days. The action of that tribunal in this proceeding and in this court is conclusive, and

whether ·it was advisedly taken upon sufficient evidence, whether according to, or disregarding the rules of the prison or the law, are questions which cannot be raised by this writ of habeas corpus, because that tribunal had the jurisdiction and the power to determine how much good time should be taken from the prisoner, and it has determined that question. When those 590 days are thrown out of the account, the time for which the prisoner was sentenced has not expired, and consequently he cannot be discharged upon this ground.

Returning a moment to the proceeding anterior to the contract of 1905, it is suggested that the incarceration under the old contracts was without authority. The answer is that, if it was without authority, then the prisoner is not entitled to any of the good time allowed under the rules of the prison. If it was with authority, then he is entitled to good time only according to the rules of the prison and the action of its tribunal, the prison board, and, as that tribunal has deprived him of 590 days, the term of his imprisonment has not expired.·

It is suggested that the prison board deprived the petitioner of 590 days of good time which he had earned and also determined that· he was insane, and it is contended that, if he was insane, he could not have been guilty of insubordination and should not have been deprived of his good time. But the record does not disclose the fact that he was insane at the time when the insubordination of which the prison board found him guilty occurred. So far as the record shows, the insanity may have been, and the legal presumption is that it was, subsequent to the insubordination.

The conclusion is that the prisoner was charged, tried, and convicted of the crime of murder by a court which had jurisdiction of the person and of the offense. Whether or not there were irregularities or errors of law in the proceedings which resulted in the conviction are questions which this writ does not present for our consideration. The court which charged the prisoner with the offense by the indictment of its grand jury and the court which tried, convicted, sentenced, and committed him had jurisdiction so to do. The Governor had lawful power to issue the executive order to the sheriff to bring the prisoner back from the Kansas penitentiary, and his confinement is not without lawful authority.

The writ must therefore be discharged, and the prisoner must be remanded to the custody of the sheriff, and it is so ordered.