QUESTION:
Are state and local police power regulations and ordinances applicable to Indian Trust Reservation lands in Broward County and activities thereon by non-Indians?
SUMMARY:
Generally, state and local regulations and taxation are applicable to non-Indians and non-Indian property located on Indian reservations so long as Indians, Indian activities or affairs, or Indian property is not unduly burdened, or tribal self-government frustrated, and so long as not prohibited by federal law. Local zoning ordinances applicable to Indian lands, leased to non-Indians, would appear to constitute a prohibited burden on Indian property, while local ordinances and regulations essentially applicable only to non-Indians or non-Indian property would not. The State of Florida has assumed jurisdiction over criminal offenses committed by or against Indians or other persons on Indian reservations, and has assumed jurisdiction over civil causes of action between Indians or other persons, or to which Indians or others are parties, arising within Indian reservations, and the civil and criminal laws of Florida are fully effective and to be enforced on Indian reservations in the same manner as elsewhere throughout the state so long as not in conflict with federal law. Local ordinances or regulations are not generally applicable or enforceable with respect to Indians or Indian reservation lands because s. 285.16, F. S., does not grant such authorization.
It is necessary to draw a firm distinction between state and local regulation of non-Indians and non-Indian property located on Indian reservation lands with regulation of Indians or Indian property located on reservations. The U.S. Supreme Court has long recognized the assertion of state sovereignty to subject non-Indians and non-Indian property located on Indian reservations to regulation and taxation so long as Indians, Indian activities or affairs, or Indian property is not unduly burdened or tribal self-government not frustrated, and so long as not prohibited by federal law. See Utah Northern Railway v. Fisher, 116 U.S. 28
(1885), wherein the lands and railroad of the Utah Northern Railway Company were held to be subject to territorial taxation notwithstanding the fact that they were located and operated on Indian reservation territory; Thomas v. Gay, 169 U.S. 264 (1898), wherein cattle owned by non-Indians and being grazed by lease on Indian reservation lands were held to be subject to territorial taxation; Moe v. Salish Kootenai Tribes, 48 L.Ed.2d 96 (1976), wherein a state statute requiring an Indian retailer to collect and remit to the state a cigarette sales tax imposed on non-Indian purchasers was upheld because the minimal burden on the Indian dealer was necessary to avoid the likelihood the non-Indian purchaser would avoid payment of the tax and such burden did not frustrate tribal self-government or run afoul of any congressional enactment dealing with the affairs of reservation Indians; and United States v. McBratney, 104 U.S. 621 (1881), wherein the court held that the state courts of Colorado had jurisdiction to prosecute a murder of one non-Indian by another committed on an Indian reservation located within that state. See also, Santa Rosa Band of Indians v. Kings County, 532 F.2d 655 (9th Cir. 1975), note 2, p. 658, app. pending, U.S. Sup. Ct.; 41 Am. Jur.2d Indians
s. 66, p. 869; 42 C.J.S. Indians s. 72, pp. 781-782; and AGO 062-156.
As stated by the Supreme Court in Surplus Trading Co. v. Cook,281 U.S. 647, 651 (1930).
 A typical illustration is found in the usual Indian reservation set apart within a state as a place where the United States may care for its Indian wards and lead them into habits and ways of civilized life. Such reservations are part of the state within which they lie and her laws, civil and criminal, have the same force therein as elsewhere within her limits, save that they can have only restricted application to the Indian wards.
Whether a particular local ordinance applicable to non-Indians or non-Indian property unlawfully impacts on Indians or Indian property is in part a question of fact. Since I do not have the factual circumstances of the application of the local ordinances, I cannot in detail respond to your inquiry. However, it seems clear that local zoning ordinances, restricting the uses of Indian lands even though leased to non-Indians, would probably constitute an unlawful burden on Indian activities and property, unless permitted by federal law. On the other hand, local ordinances or regulations essentially applicable only to non-Indians or non-Indian property probably would not constitute such a burden.
With respect to the application of state laws on Indians or Indianproperty, `[t]he policy of leaving Indians free from state jurisdiction and control is deeply rooted in the Nation's history.' Rice v. Olson, 324 U.S. 786, 789 (1945). Congress has acted consistently upon the assumption that the states have no power to regulate the affairs of Indians on a reservation, Williams v. Lee, 358 U.S. 217 (1959), and therefore `State laws generally are not applicable to tribal Indians or an Indian reservation except where Congress has expressly provided that State laws shall apply.' McClanahan v. Arizona Tax Commission,411 U.S. 164, 170-171 (1973). See also, Bryan v. Itasca County,48 L.Ed.2d 710 (1976).
Congress has previously authorized states to assume certain civil and criminal jurisdiction by affirmative state legislative action. Section 7 of 67 Statute 588 (P.L. 280 of the 83rd Congress, First Session, Aug. 15, 1953) states:
 The consent of the United States is hereby given to any other State not having jurisdiction with respect to criminal offenses or civil causes of action, or with respect to both, as provided for in this Act, to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof.
Pursuant to s. 7, supra, the Florida Legislature in 1961 enacted s. 285.16, F. S., which assumed state jurisdiction over criminal offenses and civil causes of action and provided for the enforcement of the civil and criminal laws of Florida on Indian reservations. See also s. 285.061(4), F. S. Section 285.16
provides as follows:
 (1) The state of Florida hereby assumes jurisdiction over criminal offenses committed by or against Indians or other persons within Indian reservations and over civil causes of actions between Indians or other persons or to which Indians or other persons are parties rising within Indian reservations.
 (2) The civil and criminal laws of Florida shall obtain on all Indian reservations in this state and shall be enforced in the same manner as elsewhere throughout the state.
Although Congress repealed s. 7 of the act of August 15, 1953, in 1968, such repeal did not affect cession of jurisdiction made prior to repeal. 25 U.S.C.A. s 1323(b). Barring any retrocession by the Florida Legislature to the United States based on25 U.S.C.A. s. 1323, the laws of the State of Florida govern criminal offenses committed by or against Indians or other persons within Indian reservations, and the civil laws of the State of Florida control on such reservations as they do elsewhere in Florida, insofar as such criminal or civil laws do not conflict with federal law. See AGO's 072-403 and 074-77.
I find no indication that the Legislature intended that local ordinances be included in the term `civil and criminal laws of Florida' as used in s. 285.16, supra, so as to allow their operation over reservation Indians or reservation property within a particular county. Rather, s. 285.16 requires the civil and criminal laws of Florida to be enforced on Indian reservations `as elsewhere throughout the State.' Since local ordinances are not applicable throughout the state, I do not believe they are included within the assumption of jurisdiction contained in s.285.16, which is limited to civil and criminal laws of statewide application. Cf., Santa Rosa Band of Indians v. Kings County,supra, pp. 659-664.
Prepared by: J. Kendrick Tucker Assistant Attorney General