REQUESTED BY: Jeffrey P. Goltz, Richardson County Attorney
In the recent decision of Young v. Neth, 263 Neb. 20, ___ N.W.2d ____ (January 18, 2002), the Nebraska Supreme Court concluded that Young, a non-Indian, had not been validly arrested for the misdemeanor offense of driving under the influence in Richardson County. The court noted two jurisdictional defects: (1) a tribal officer effected Young's arrest, yet tribal officers may not assert jurisdiction over non-Indians even where the offense occurs on tribal lands and (2), in any event, Young was arrested outside the reservation and, consequently, outside the territorial boundaries of the tribal officer's jurisdiction.
You have presented a series of questions pertaining to the authority of tribal officers to make arrests for Nebraska misdemeanor and felony offenses within and beyond the borders of tribal territories. You have inquired whether the jurisdictional defects noted in Young v. Neth could be avoided if tribal officers are certified as Nebraska law enforcement officers, and are also cross-deputized by the Governor of Nebraska as special deputy state sheriffs. In order to properly respond to your inquiries, a brief historical analysis of tribal, federal, and state criminal jurisdiction over offenses committed on Indian reservations is first necessary.
Generally speaking, federal Indian laws and treaties pre-empt state laws so that, without a specific federal statute delegating jurisdiction to the states, jurisdiction over crimes committed on Indian Reservations rests primarily with federal authorities. As early as 1817, Congress created general federal criminal jurisdiction over non-Indians committing crimes against Indians on Indian land. See, 18 U.S.C. § 1152, known as the Indian Country Crimes Act. See also, Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 98 S.Ct. 1011 (1978) (Indian tribal courts do not have inherent criminal jurisdiction to try non-Indians). In 1885, Congress enacted the Major Crimes Act, codified at 18 U.S.C. § 1153, which granted the United States exclusive jurisdiction over enumerated crimes committed by Native Americans within tribal territory. Pursuant to the Indian Citizenship Act of 1924, found at 8 U.S.C. § 1401 (a)(2), Congress granted citizenship to all Native Americans, effectively extending general federal criminal laws to Indians while on Indian Reservations. Stone v. United States, 506 F.2d 561 (8th Cir. 1974).
Under these laws, federal authorities have jurisdiction over crimes committed on tribal lands involving a Native American, whether a victim or perpetrator. Such crimes would include those committed by an Indian against the person or property of another Indian, offenses committed by a non-Indian against an Indian, and crimes committed by an Indian against a non-Indian. United States v. Johnson, 637 F.2d 1224 (9th Cir. 1980).
Although federal jurisdiction is preeminent, it is not exclusive. As limited sovereigns, Indian Tribes retain the power to prescribe and enforce internal criminal and civil laws among their members. See, U.S. v. Antelope, 430 U.S. 641, 97 S.Ct. 1395 (1977); State v. Schmuck,850 P.2d 1332 (Wash. 1993). Even where jurisdiction to try and punish an offender rests outside the tribe, tribal officers have the authority to stop, detain, and transport an offender to the proper authorities. See, Duro v. Reina, 495 U.S. 676, 110 S.Ct. 2053, rev'd and superceded by retroactive statute on other grounds (1990); see also, Op. Att'y Gen. 97061 (November 26, 1997).
The respective states have also historically retained criminal jurisdiction over offenses committed on tribal lands where both the perpetrator and victim are non-Indians. United States v. McBratney,104 U.S. 621, 26 L.Ed. 869 (1881); Draper v. United States, 164 U.S. 240,17 S.Ct. 107 (1896). See also, State v. Burrola, 669 P.2d 614 (1983) (state has jurisdiction to prosecute non-Indian for victimless criminal offense occurring on Indian Reservation). Offenses committed by Native Americans outside the territorial boundaries of a reservation are, of course, within state criminal jurisdiction. DeMarrias v. State of South Dakota, 319 F.2d 845 (8th Cir. 1963), Robinson v. Wolff, 349 F. Supp. 514
(D.Neb. 1972).
In 1953, Congress altered the foregoing jurisdictional scheme when it enacted Public Law 280, codified as 18 U.S.C. § 1162, which essentially transferred to certain states the right to exercise criminal jurisdiction in specified areas of Indian County "to the same extent that such State or Territory has jurisdiction over offenses committed elsewhere within the State or Territory. . . ." Pursuant to Public Law 280, the State of Nebraska was specifically given the right to exercise criminal jurisdiction over all Indian County within its borders. See also, Walker v. Rushing, 898 F.2d 672 (8th Cir. 1990) (Public Law 280 does not preclude concurrent tribal authority over its own members for violations of tribal law).
Thereafter, in 1968, Congress permitted the United States to take back, via retrocession by any state, "all or any measure" of criminal jurisdiction acquired by such state pursuant to Public Law 280. See,25 U.S.C. § 1323(a). In 1969, pursuant to this Act, the State of Nebraska retroceded criminal jurisdiction over the Omaha Reservation located in Thurston County, except for offenses involving the operation of motor vehicles on public roads or highways within the reservation. See, Omaha Tribe v. Village of Walthill, 334 F. Supp. 823 (D.Neb. 1971), aff'd per curiam, 460 F.2d 1327 (8th Cir. 1972), cert. denied,409 U.S. 1107, 93 S.Ct. 898 (1973); Walker v. Rushing, 898 F.2d 672 (8th Cir. 1990). Over the years, Nebraska has continued to retrocede much of the criminal jurisdiction it acquired over tribal lands under Public Law 280 back to the federal government. See, L.R. 57, 89th Legis., 2nd Sess., Neb. Legis. J. v. 1, p. 87 (1986) (Winnebago Reservation); L.R. 17, 97th Legis., 1st Sess., Neb. Legis. J. v. 2, pp. 2314-15, 2356 (2001) (Santee Sioux Reservation).
In short, the State of Nebraska continues to possess limited jurisdiction over criminal offenses occurring on retroceded tribal lands to the extent that the Legislature retained jurisdiction, as well as that jurisdiction the states have historically possessed over crimes committed by non-Indians against other non-Indians, or victimless crimes committed by non-Indians. Criminal jurisdiction over offenses committed by or against Native Americans within the confines of retroceded reservations remains generally with federal authorities or the individual Tribes. Pursuant to Public Law 280, the State of Nebraska retains criminal jurisdiction over those tribal lands within the state that have not been retroceded to the United States, including the Iowa Tribe of Kansas and Nebraska Reservation, partially located in Richardson County.
You have noted that the tribal officer who effected the arrest in Young v. Neth in Richardson County was, in fact, a Nebraska certified law enforcement officer and was also cross-designated as a special deputy state sheriff at the time of Young's arrest. However, this information was not set forth in the arrest reports, nor did the administrative record in Young v. Neth establish this cross-designation. Additionally, we note that this particular tribal officer's cross-designation is limited to the boundaries of the reservation within Richardson County, and does not include the entire county.
Certainly, the cross-deputization of tribal police officers attempting to effect an arrest under Nebraska law may serve to avoid the jurisdictional defects noted in Young v. Neth. Pursuant to Neb. Rev. Stat. § 84-106 (1999), the Governor is authorized to appoint special deputy state sheriffs to assist in the enforcement of state criminal laws. These appointments convey to the special deputies the same powers that sheriffs have to enforce the criminal laws in their respective counties. Certification under Neb. Rev. Stat. § 81-1414 (1999) is a prerequisite to appointment as a law enforcement officer, but is not a grant of jurisdiction. Consequently, a tribal officer who is both certified as a law enforcement officer, and who has been appointed as a special deputy state sheriff under Neb. Rev. Stat. § 84-106, has the power to arrest both Native Americans and and non-Indians for violations of Nebraska law, where the state retains criminal jurisdiction.
Noting the foregoing legal and factual summaries, we will endeavor to respond to your individual questions as follows:
Question: If a tribal officer is certified and cross-deputized as a special state deputy sheriff, can the officer arrest for a Nebraska misdemeanor or felony offense which occurs on tribal territory, within Richardson County? Does it matter whether the suspect is an Indian or non-Indian?
Answer: The tribal lands within Richardson County are under the criminal jurisdiction of the State of Nebraska pursuant to Public Law 280. A tribal officer who has been cross-deputized as a special deputy state sheriff has the power to arrest both Indians and non-Indians for Nebraska misdemeanor and felony offenses occurring on tribal territory within Richardson County.
Question: If a tribal officer is certified and cross-deputized as a special state deputy sheriff, can the officer arrest for a Nebraska misdemeanor or felony offense which occurs outside the boundaries of tribal territory, but within Richardson County? Does it matter whether the suspect is an Indian or non-Indian?
Answer: Our response necessarily depends on the jurisdictional limits of the tribal officer's cross-designation. If the designation is limited to the boundaries of the reservation, then the tribal officer would lack the authority to effect an arrest under Nebraska law for either a misdemeanor or felony offense that occurred outside the reservation.
Question: If a tribal officer is certified and cross-deputized as a special state deputy sheriff, can the officer arrest for a Nebraska misdemeanor or felony offense which occurs on tribal territory within Richardson County, but where the arrest is effected outside the boundaries of tribal territory, but within Richardson County? Does it matter whether the suspect is an Indian or non-Indian?
Answer: If the tribal officer is acting in fresh and continued pursuit of a person suspected of committing a felony within the officer's primary territorial jurisdiction, then the officer, acting as a special deputy state sheriff, has the authority to pursue and arrest the suspected felon in any other jurisdiction in the state. See, Neb. Rev. Stat. § 29-215 (2)(a) (1999); State v. Masat, 239 Neb. 849,479 N.W.2d 131 (1992). Neb. Rev. Stat. § 29-215 (2)(b) also extends the fresh pursuit doctrine to persons suspected of committing a misdemeanor or traffic infraction, authorizing the pursuit and arrest of such persons within 25 miles of the boundaries of the law enforcement officer's primary jurisdiction. See also, State v. Cuny, 257 Neb. Rev. 168, 595 N.W.2d 899 (1999) (statute applies to Nebraska law enforcement officer, and does not apply to officers crossing state lines). Again, the tribal officer's status as a special deputy state sheriff would authorize the fresh pursuit and arrest of persons outside the reservation, whether Indian or non-Indian, in accordance with Nebraska law.
Sincerely,
 DON STENBERG Attorney General
 Marie Colleen Clarke Assistant Attorney General
APPROVED:
_______________________ Attorney General