[No. 2178]

# IN THE MATTER OF THE APPLICATION OF CHARLES S. CROSBY FOR A WRIT OF HABEAS CORPUS.

[149 Pac. 989]

1. FISH—GAME—JURISDICTION OF STATE—STATUTES.

The state has inherent right as a sovereign power to enact laws for the protection and preservation of fish and game in the waters and upon the land within its limits, and he who takes such fish and game does so as a privilege, and not a right; the privilege being subject to such conditions and limitations as the state may impose.

2. INDIANS — CRIMES ON INDIAN RESERVATIONS — JURISDICTION OF STATE COURTS.

The rule that state courts have jurisdiction over offenses committed by parties other than Indians on Indian reservations is not affected by a provision in the enabling act for taking account of Indian lands or Indian reservations within the territory, or providing that such Indian lands shall remain under the absolute jurisdiction and control of Congress.

3. FISH—PROTECTION—STATUTES.

Stats. 1913, c. 270, sec. 9, making it unlawful to catch or have in one's possession on any calendar day more than ten pounds of certain kinds of fish, is a statute properly enacted under the police power of the state for the preservation and protection of fish within the public waters thereof.

4. INDIANS—CRIMES ON INDIAN RESERVATIONS—FISH AND GAME LAWS.

A justice of the peace has jurisdiction of a prosecution for violating Stats. 1913, c. 270, sec. 9, making it unlawful to catch or have in one's possession more than a certain amount of fish on any calendar day, although the offense is committed by a white person within the limits of an Indian reservation; the state having control of the fish and game within its boundaries.

ORIGINAL PROCEEDING.  Charles S. Crosby was arrested in Washoe County for a violation of the fish and game laws, and he applies for a writ of *habeas corpus*.  **Writ denied.**

*M. B. Moore,* for Petitioner:

The state has no jurisdiction to prosecute for an alleged offense committed within an Indian reservation.  Under the territorial enabling act approved March 2, 1861, jurisdiction over Indians and their property was not included. (Rev. Laws, sec. 192.)  The Pyramid Lake Reservation is Indian territory, and the right of whites, as well as

the exclusive right of the Indians, to fish and hunt therein has been determined. (*U. S.* v. *Leathers,* 6 U. S. 17; *U. S.* v. *Sturgeon,* 6 U. S. 29.)

The state has no jurisdiction to punish any one for the violation of its game and fish laws within an Indian reservation. (*In Re Lincoln,* 129 Fed. 247.)

It is not unlawful for any person, either Indian or white man, to have more than ten pounds of trout, where said trout are taken from waters not of the State of Nevada. (*People* v. *McNeil,* 71 Mich. 325; *State* v. *McGuire,* 24 Or. 370; *Commonwealth* v. *Holl,* 128 Mass. 410.)

*E. F. Lunsford,* District Attorney, and *A. N. Salisbury,* Deputy District Attorney, for Respondent:

The state laws are operative over and upon the Pyramid Lake Indian Reservation against all white persons committing offenses thereon. The fish and game laws are not operative against Indians on the reservation—not because the Indians are located on the reservation, but because they are wards of the government. The cases cited by petitioner do not support his contentions in regard to the case at bar.

By the Court, McCarran, J.:

This is an original proceeding in *habeas corpus.* The petitioner, Charles S. Crosby, was arrested within the boundaries of the Pyramid Lake Reservation, the same being an Indian reservation in this state set apart by the United States government for the use and occupation of the Pah Ute Indians. Petitioner was charged with a violation of an act of the legislature of the State of Nevada, entitled "An act to provide for the protection and preservation of trout and other fish in the waters of the State of Nevada, and other matters pertaining thereto," etc.

Section 9 of the act is as follows:

"It shall be unlawful for any person or persons, firm, company, or corporation, to take, catch, or kill from any of the waters of the State of Nevada, or to have in his,

their, or its possession, on any one calendar day, more than ten pounds of trout, or of land-locked salmon, or royal chinook salmon, or large-mouthed or small-mouthed black bass, or whitefish caught in the waters of this state; *provided*, that nothing in this act shall be so interpreted as to prevent or to prohibit the taking of ten trout, or salmon, or other fish specified in this act." (Stats. 1913, p. 436.)

The facts as admitted are as follows: The petitioner, a white man and a citizen of this state, resided in and about Pyramid reservation, and was engaged in the business of buying fish from the Indians of the reservation and transporting them to places of market. At the time of his arrest, he was within the confines of the Pyramid reservation, and had in his possession more than ten fish and more than ten pounds of fish. It is admitted that the fish in the possession of petitioner at the time of his arrest were caught by individual Indians on the Pyramid Lake Reservation. Petitioner, having been arrested, was tried before the nearest justice of the peace, to wit, in Wadsworth township, and was by said justice of the peace convicted and sentenced to pay a fine of $25 and to serve one day in the county jail of Washoe County.

It is the contention of petitioner that the fish and game laws of the State of Nevada are not operative, even as against persons not Indians, within the confines of Pyramid Lake Indian Reservation, and that the justice of the peace of Waadsworth township—which embraces the said *Pyramid reservation—did not have jurisdiction to hear the* case, and that the same is a subject for the jurisdiction of the United States courts.

It is the contention of attorney for the respondent that the State of Nevada possesses power to control and regulate the taking of game and fish from all the public waters within the confines of this state, contending that the state has the power to regulate the taking of fish from Pyramid Lake by persons other than Indians, even though the said lake be within the Indian reservation.

The Pyramid Lake Indian Reservation was definitely

created and the lands embraced therein withdrawn from sale or disposition, by order of President Grant on March 23, 1874, some ten years after the admission of this state into the Union. We have been unable to find the existence of any treaty or agreement between the government and the Pah Utes, or other tribe of Indians, relative to or affecting the territory embraced within this reservation, either prior or subsequent to the admission of this state. The state has by no act of which we are aware ever relinquished jurisdiction over this territory.

[1] It may be asserted as an established proposition of law that it is a right inherent in the state, as the sovereign power, to enact laws for the protection and preservation of fish and game in the waters and on the land within the confines of its territory. Wild fowl and fish in public waters are the subjects of public protection, control, and regulation, in so far as preservation is concerned, and he who takes such fish or game does so as a privilege, not a right, and the taking under the privilege thus accorded is subject to such conditions and limitations as the sovereign power of the state, speaking through its legislature, has seen fit to impose. (*State v. Rodman*, 58 Minn. 393, 59 N. W. 1098; *State v. Northern Pacific Express Co.*, 58 Minn. 403, 59 N. W. 1100; *Geer v. Connecticut*, 161 U. S. 533, 16 Sup. Ct. 600, 40 L. Ed. 793; *Magner v. People*, 97 Ill. 333; *Ex Parte Maier*, 103 Cal. 476, 37 Pac. 402, 42 Am. St. Rep. 129; *Kidd v. Pearson*, 128 U. S. 1, 9 Sup. Ct. 6, 32 L. Ed. 346; *Phelps v. Racey*, 60 N. Y. 10, 19 Am. Rep. 140.)

The legislature of this state having enacted the statute sought to be enforced here, for the purpose of protecting and preserving the fish of the public waters of the state, the question here presented, in view of the admitted facts, resolves itself into the proposition as to whether or not a white man can disregard the provisions of the statute when his acts in such respect are done within the confines of an Indian reservation.

[2] That the state courts have jurisdiction over offenses committed by parties other than Indians on Indian reservations is, we think, well established; and this general rule is not affected by a provision in the enabling act of a state taking account of Indian lands or Indian reservations within the territory or providing that such Indian lands should remain under the absolute jurisdiction and control of the Congress of the United States. (*Draper* v. *United States,* 164 U. S. 240, 17 Sup. Ct. 107, 41 L. Ed. 419.)

In the case of *United States* v. *McBratney,* 104 U. S. 621, 26 L. Ed. 869, the Supreme Court of the United States said:

"Whenever, upon the admission of a state into the Union, Congress has intended to except out of it an Indian reservation, or the sole and exclusive jurisdiction over that reservation, it has done so by express words. (*The Kansas Indians,* 5 Wall. 737, 18 L. Ed. 667; *United States* v. *Ward,* Woolw. 17, Fed. Cas. No. 16,639.)"

In that case it was held that a state, by its admission into the Union upon an equal footing with the original states, had, without an exception, expressly set forth in the enabling act of admission, criminal jurisdiction over its own citizens and persons other than Indians on reservations throughout the whole of the territory within its limits, including an Indian reservation, even where such reservation existed before the organization and admission of the state. This decision, however, took into account such exceptions as might arise by reason of the express declaration on the part of Congress made in contemplation of existing treaties entered into between the Indians and the government prior to the admission of the state. Such a condition does not exist in the case at bar.

The Supreme Court of the United States, in the case of *Pollard* v. *Hagan,* 3 How. 212, 11 L. Ed. 565, and again in *Shivley* v. *Bowlby,* 152 U. S. 1, 14 Sup. Ct. 548, 38 L. Ed. 331, definitely settled the proposition that, under the provisions of the federal constitution, the rights and powers which belonged to the original thirteen states, applicable

to the public waters within their respective territories, must be conceded to each new state admitted into the Union, because such was essential in order to establish to each state rights on an equal footing with the original states. The sovereign rights and powers inherent in and exercised by the original states in the way of regulation, restriction, and licensing the enjoyment by individuals in the privilege of taking fish from the public waters are powers which must be conceded to each of the states on a basis of equality with the original states. (*McCready* v. *Virginia*, 94 U. S. 391, 24 L. Ed. 248; *Manchester* v. *Massachusetts*, 139 U. S. 240, 11 Sup. Ct. 559, 35 L. Ed. 159.)

In the case of *Manchester* v. *Massachusetts*, *supra*, the Supreme Court of the United States held that a statute of Massachusetts enacted for the protection of fisheries in Buzzard's Bay was valid, and that its enforcement was within the jurisdiction of the state courts within what was generally recognized as the territorial limits of the state by the law of nations. It was there held that the state courts of Massachusetts could lawfully take jurisdiction of a violation of the statute of the state, even though the party violating was a vessel licensed for the fishing trade pursuant to the laws of the United States, and the act took place on waters over which the United States had control. The primary ground upon which the court there based its decision was that in the control of fisheries within the state the state government was supreme. We find this case referred to approvingly in the case of *United States* v. *Alaska Packers* (C. C.) 79 Fed. 152.

The waters of Pyramid Lake, although entirely embraced within the confines of the Pyramid Lake Indian Reservation, are undoubtedly public waters of this state, to the extent, at least, that state regulation of the taking of fish from such waters by parties other than Indian wards of the government may be effective. The same principle applies as to the operation of statutes such as this, with reference to parties, not Indian wards of the government, violating its provisions as to the limit of catch or the number of fish had in possession on any one calendar day.

[3] Statutes such as the one sought to be enforced against petitioner are properly enacted under the police power of the state, and have as their object the protection and preservation of fish within the public waters of the state, to the end that the fish of public bodies of water may propagate their specie; that such stream may not be entirely depleted of that which furnishes a wholesome food for mankind. The statutes of the several states, as well as those found in Canada and England, set forth what might be termed ingenuous schemes devised by the legislative bodies to prevent the violation of the spirit of the law enacted for the preservation of fish and game. In some jurisdictions, exportation by any means is prohibited; in others, sale or disposition is prohibited, while in still others either entire prohibition is prescribed for certain territory, or for a specified length of time, or the means or manner of taking or catching is so limited as to make such taking or catching ' dependent upon skill. All of these statutes are an aid in the accomplishment of the ultimate object—protection and preservation.

[4] The legislature of this state, having in mind a desire to prevent wholesale slaughter of the fish of the public waters, placed a limit upon the catch which might be made by any one individual, as well as the amount and number that any one person might have in his possession upon any one calendar day, and fixed that limit as in section 9 prescribed.

In the case of *Ward* v. *Race Horse,* the Supreme Court of the United States, speaking through Mr. Justice (now Chief Justice) White, held, by analogy based upon the decisions of that court in *Cardwell* v. *American Bridge Co.,* 113 U. S. 205, 5 Sup. Ct. 423, 28 L. Ed. 959, and *Willamette Iron Bridge Co.* v. *Hatch,* 125 U. S. 1, 8 Sup. Ct. 811, 31 L. Ed. 629, that a treaty entered into between the government and the Indians within the territory embraced in the State of Wyoming, which treaty gave the right to the Indians to hunt on unoccupied lands of the United States in the hunting districts, was repealed by reason of the conflict between the treaty itself and

the subsequent act admitting the state into the Union, which subsequent act of admission made no mention of the existing treaty; and the basis for this decision was the fact that the power of all the states to regulate the killing of game within their borders being admitted, the State of Wyoming, coming into the Union on an equal footing with the original states, could not be deprived of the power of this regulation. (*Ward* v. *Race Horse*, 163 U. S. 504, 16 Sup. Ct. 1076, 41 L. Ed. 244.)

In the case of *Geer* v. *Connecticut, supra,* also a decision by Mr. Justice (now Chief Justice) White, an exhaustive review of the law applicable to this subject is set forth.

In a very recent case, decided in the United States District Court for the Eastern District of Arkansas, the court reviewed many of the decisions to which we have referred herein, and while that case is not entirely in point as affecting the matter at bar, it is nevertheless there held that:

"The states retain the police power which they, as sovereign nations, possessed prior to the adoption of the national constitution, so far as such power pertains to the internal affairs of the state."

In this decision, we find a reiteration of the principle that wild game and fish in public waters alike are the property of the states in their sovereign capacity, as the representatives and for the benefit of all of their people in common; from which principle, so often asserted by the several courts, it follows, as a matter of course, that the right of protection and preservation of game and fish is a matter for state legislation, and a subject over which the state courts have jurisdiction when a violation of such laws is brought before them by proper process, and where a party accused is one over whose person the state courts have jurisdiction. (*United States* v. *Shauver*, 214 Fed. 154.)

It is true that in the case of *New York Indians*, 5 Wall. 761, 18 L. Ed. 708, the power of the state to exercise its

right of taxation as against lands embraced within an Indian reservation, which reservation existed prior to the adoption of the constitution of the United States, was denied; but no case has been brought to our attention in which the criminal laws of the state have been declared to be inoperative, where a violation of such laws was perpetrated by a citizen of the state within an Indian reservation. And, indeed, it seems unreasonable to suppose that a law, enacted under the police power of the state to accomplish a wholesome purpose for the benefit of all of the people of the state, might be violated and an immunity created against the violator because of his having either taken refuge in or having lived or abided in an Indian reservation existing within the state. The power of the state courts to try offenses committed under such circumstances, and their power to enforce a law of this character where its violation took place on an Indian reservation by a person not an Indian or ward of the government, cannot, in the light of the decisions of the Supreme Court of the United States herein referred to, be questioned.

We are referred to the case of *In Re Lincoln* (D. C.) 129 Fed. 247, and it is the contention of petitioner that the reasoning in that case supports his position here. It must be observed, however, that in that case the court laid special stress upon the fact that the petitioner being a ward of the government and residing on allotted lands within the boundaries of an existing Indian reservation, the justice court was without jurisdiction to enter judgment under a conviction for the violation by him of a statute prohibiting the killing of game during a certain season of the year. It is not to be even presumed that the court in that case would have held that one not an Indian or ward of the government could have violated the statute there in question on the reservation without coming within the jurisdiction of the state courts.

From the foregoing it follows that the petitioner, as well as the subject-matter of the offense charged, was

properly within the jurisdiction of the justice court of Wadsworth township, and the petition for the writ herein sought to be perpetuated should be denied.

It is so ordered.