UNITED STATES of America,

v.

**James Oliver JONES, Jr., Mat Jones, Hillel Samuel Liebert, Willie Lawrence McCray, Daniel Robert Moses, Peter Orris and Eugene Rouse, Jr., Defendants.**

United States District Court
S. D. New York.

July 30, 1965.

Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, by Roger Goldberg, J. Edward Meyer, III, John S. Martin, Jr., Asst. U. S. Attys., for the United States.

Martin M. Berger and Michael Standard, New York City, for defendants.

TYLER, District Judge.

This is a motion by defendants for various forms of relief growing out of a charge of disorderly conduct punishable under the Laws of the State of New York[1] as applied to federal reservations pursuant to Title 18, United States Code § 13 ("The Assimilated Crimes Act").

The filing of this disorderly conduct information followed a demonstration by defendants on the morning of June 23, 1965, during the course of which, according to the information allegations, they blocked the doorways and entrances to this court house by chaining some of the doorways and, in some instances, chaining themselves to such entrances, thereby preventing entry and exit to and from this building by litigants, lawyers, court personnel and other persons having business here.

Specifically, defendants seek the following relief: (1) a bill of particulars; (2) discovery and inspection of various photographs; and (3) dismissal of the information in that (a) the arrests effected by the marshals in this case were illegal; (b) the information fails to state facts sufficient to constitute an offense or crime; (c) the offense charged is not one properly cognizable under the Assimilative Crimes Act; and (d) Section 722 of the New York Penal Law is unconstitutional on its face.

The government has consented to give the defendants a bill of particulars and discovery of the photographs requested; thus, these branches of relief are granted upon such consent.

I.

Defendants urge that their arrest on June 23, 1965 by United States marshals was illegal and thus requires a dismissal of the information. Briefly, their legal theory is that since the offenses charged are not properly based upon the Assimilative Crimes Act, the offenses are not crimes against the United States within the meaning of 18 U.S.C. § 3053 and the marshals were without power to act.[2] The short answer to this argument is that this court finds that under the pleaded facts the assimilation of state law was proper (see discussion at III infra) and the conduct of the defendants thus did constitute an activity against which the federal marshals had authority to act. Further, an illegal arrest would not necessarily require the dismissal of the information. See Wong Sun v. United States, 371 U.S. 471, 491, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

II.

The defendants' claim that the information is invalid in that it fails to state sufficient facts is likewise found to be without merit. The Court of Appeals of New York has ruled that an information charging disorderly conduct must be pleaded with "reasonable exactitude", People v. Schultz, 301 N.Y. 495, 497, 95 N.E.2d 815 (1950). The information here handsomely meets this test. It informs defendants of the "when", the "where" and the "how" of the charge.

[1] More particularly the government is alleging a violation of N.Y. Penal Law, McKinney's Consol.Laws, c. 40, § 722(2) which states in relevant part: "Any person who with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned, commits any of the following acts shall be deemed to have committed the offense of disorderly conduct:

\*    \*    \*    \*    \*

2. Acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others; \* \* \*."

[2] The power of the United States marshals to make arrests is derived from Title 18, § 3053 providing:

"United States marshals and their deputies may carry firearms and make arrests without warrant for any offense against the United States committed in their presence, or for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony."

It indicates against whom the alleged obstruction was made and what implementation was used to accomplish that interference. Moreover, as noted above, the government has consented to submit a bill of particulars which presumably will reveal further details underlying the charge.

### III.

The defendants next claim that the offense charged is not one cognizable under the Assimilative Crimes Act.[3] They base their argument on the premise that there is already available to the federal authorities enactments of Congress[4] which make the alleged activities of the present defendants indictable and that under such circumstances recourse to state law is improper under Williams v. United States, 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946).

This court finds this argument of defendants to be unconvincing and their reliance on Williams to be misplaced. There the Court said, 327 U.S. at 717, 66

S.Ct. at 781, "the precise acts upon which the conviction depends had been made penal by the laws of Congress * * * and the offense known to * * * [state law] has been defined and prohibited by the Federal Criminal Code."[5] The Supreme Court was concerned with indiscriminate assimilation of state law so as to enlarge the scope of an existing and precisely defined federal penal statute.

We are faced with no such problem here, for there is no federal statute defining the offense spelled out in Subsection 2 of Section 722 of the New York Penal Law. Although the government, in my view, might properly have selected the alternative legal avenue of 18 U.S.C. § 1507 (picketing or parading near a court house) to support its information,[6] it was not error to proceed upon the essentially different theory of a disorderly conduct charge.[7]

### IV.

Defendants' final assertion is that Section 722 is unconstitutional on

---

3. 18 U.S.C. § 13 reads in part: "Whoever [on a federal reservation] * * * is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State * * * in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment."

4. 18 U.S.C. § 1507 reads in part: "Picketing and parades. Whoever, with the intent of interfering with, obstructing, of impeding the administration of justice, or with the intent of influencing any judge, juror, witness, or court officer, in the discharge of his duty, pickets or parades in or near a building housing a court of the United States, or in or near a building or residence occupied or used by such judge, juror, witness, or court officer, or with such intent uses any sound-truck or similar device or resorts to any other demonstration in or near any such building or residence, shall be fined not more than $5,000 or imprisoned not more than one year, or both."

   18 U.S.C. § 401 reads in part: "Power of Court. A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

   (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; * * *."

5. In Williams the defendant was convicted of a charge of statutory rape of a 17 year old girl under an assimilated state law which set the age of consent at 18. There was at the time a similar federal statute which could have been applied and which set the age of consent at 16. The Supreme Court reversed the conviction.

6. In my view, 18 U.S.C. § 401, the contempt statute, is inapposite to the conduct pleaded in the information.

7. Indeed, there is authority for the proposition that the government would have been justified in proceeding both under an assimilation of N.Y. Penal Law § 722 and 18 U.S.C. § 1507. See Clark v. United States, 267 F.2d 99 (4th Cir. 1959) and United States v. Beal, 126 F.Supp. 363 (N.D.Cal.1954).

its face.[8] It is recognized, of course, that vague and widesweeping statutory concepts of "breach of the peace" and "disorderly conduct" cannot be applied to constitutionally protected forms of expression. Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963) and Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). Indeed, the very language found opprobrious to the Court in Cox, viz. "to agitate, to arouse from a state of repose, to molest, to interrupt, to hinder, to disquiet", is close to that of the New York statute under scrutiny here, viz. "to annoy, disturb, interfere with, obstruct, or be offensive to others".

 But, unlike the highest court of Louisiana, the Court of Appeals of New York has narrowly applied and construed Subsection 2 of Section 722. This is crucial in that the statutory interpretation given by the higher state courts has been recognized by the Supreme Court "as definitely as if it had been so amended by the legislature". Winters v. People of State of New York, 333 U.S. 507, at page 514, 68 S.Ct. 665, at page 669, 92 L.Ed. 840 (1948). While, as pointed out in Cox, the courts of Louisiana have given such a broad and sweeping interpretation to the breach of peace statute of that state to as likely allow for conviction for constitutionally protected speech and assembly as it might for illegal conduct, such has not been the construction of the similar New York statute by the highest court of this state.

In People v. Carcel, 3 N.Y.2d 327, 165 N.Y.S.2d 113, 144 N.E.2d 81, 65 A.L.R.2d 1145 (1957) and People v. Nixson, 248 N.Y. 182, 161 N.E. 463 (1928), for example, the Court of Appeals of New York expressed its caution and concern by applying a guarded and narrow interpretation to Section 722(2) and in both cases convictions under this statute were reversed. In those and other cases, the Court of Appeals has made it abundantly clear that Section 722(2)

cannot be applied to peaceful demonstrations causing minor inconvenience to passers-by—i. e. that the language in question can only refer to a disturbance of public order by violence or by acts likely to cause violence or by conduct which produces consternation and alarm among the general public. As so narrowly limited and defined, New York Penal Law § 722(2), in my view, cannot be held to be unconstitutional on its face.

The motions for particulars and discovery are granted; all the other defense motions are denied.

It is so ordered.

8. As already noted we are particularly interested in N.Y. Penal Law § 722(2). See footnote 1, supra.