**UNITED STATES of America**

v.

**Richard Earl CHAPMAN, aka Dean Gardner.**

**Crim. No. 174–70–A.**

United States District Court, E. D. Virginia, Alexandria Division.

Jan. 18, 1971.

Justin Williams, Asst. U. S. Atty., Alexandria, Va., for plaintiff.

Paul G. Varoutsos, North Arlington, Va., James M. Shellow, Milwaukee, Wis., for defendant.

## MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

On June 9, 1970, the defendant was arrested by U.S. Park Police at the Washington National Airport and was charged and prosecuted in federal court for illegal posseession of marihuana in violation of the Code of Virginia, sections 54–488 and 54–516, under the Assimilative Crimes Act, 18 U.S.C., section 13. At his trial, the defendant moved to dismiss contending that Congress has enacted laws which prohibit his alleged crime and, therefore, he should not have been prosecuted under the Virginia statute but rather under the applicable federal law. The Government, on the other hand, contended that no federal law has been enacted covering the crime under which the defendant was charged and thus he was properly prosecuted under the Virginia statute by virtue of the Assimilative Crimes Act. Although the defendant's motion to dismiss was overruled and he subsequently entered a plea of guilty, the court allowed the defendant's counsel to submit a brief in support of his motion which might dissuade the court from its earlier ruling. After due consideration, we again find the defendant's argument without merit and adhere to the former ruling.

The issue presented and ably argued by defendant's counsel is whether one who is found in possession of marihuana at the Washington National Airport can be prosecuted in the federal court under the Code of Virginia, section 54–488, by virtue of the Assimilative Crimes Act, 18 U.S.C., section 13, for *unlawful possession* of a narcotic drug.

The Code of Virginia, section 54–488 states:

"It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug, except as authorized in this article."

"Narcotic drugs" are defined by the Code of Virginia, section 54–487(14) as "coca leaves and opium, cannabis and isonipecaine and every substance not chemically distinguishable from them." "Cannabis" is further defined in section 54–487(19) as "all parts of the plant Cannabis Sativa L.," including the seeds, resin, and other derivatives of the plant but not including the mature stalks or derivatives thereof. In other words, cannabis is a synonym for marihuana as they both mean and include the flowering tops of the hemp plant.

The Assimilative Crimes Act, 18 U.S.C., section 13, states in part:

"Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by *any enactment of Congress*, would be punishable if committed or omitted within the jurisdiction of the State * * * in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment." (Emphasis added.)

It may be noted that 18 U.S.C., section 7(3) demonstrates that the Washington National Airport is one of the areas within the scope of the Assimilative Crimes Act.

■ A study of the applicable statutes cited above brings our issue into focus. Simply stated, if Congress has enacted a statute which prohibits possession of marihuana, a person charged with such a crime committed at Washington National Airport must be prosecuted under the federal law and not under a similar state law. If, however, Congress has not enacted such a law, the person charged with possession of marihuana at Washington National Airport may be prosecuted under the applicable Virginia statute.

In contending that Congress has enacted laws prohibiting the possession of marihuana, the defendant has cited 26 U.S.C., section 4744, et seq., and 21 U.S.C., section 176a. An analysis of these two statutes will reveal, however, that possession of marihuana is nowhere specifically prohibited.

■ Title 26, U.S.C., section 4744, provides in part:

"It shall be unlawful for any person who is a transferee required to pay the transfer tax imposed by section 4741(a)—

(1) to *acquire* or otherwise *obtain* any marihuana without having paid such tax, or

(2) to *transport* or *conceal*, or in any manner facilitate the transportation or concealment of, any marihuana so acquired or obtained." (Emphasis added.)

The statute then goes on to establish the following presumption:

"Proof that any person shall have had in his possession any marihuana and shall have failed * * * to produce the order form * * * shall be presumptive evidence of guilt under this subsection * * *."

It may be noticed that although the word "possession" does not appear in the prohibitory part of the statute, it is included in the presumption. It must first be emphasized, however, that this is a tax statute and the crime is not for possession of marihuana, but rather the acquisition, transportation, or concealment of *untaxed* marihuana. Secondly, the presumption enacted to facilitate prosecution under the statute does not make it unlawful to possess even untaxed marihuana but merely presumptive evidence of guilt of obtaining, transporting, or concealing untaxed marihuana where the order form, which must accompany the marihuana, cannot also be produced.

■ The second federal statute which the defendant contends could have been used by the Government against him is 21 U.S.C., section 176a. Generally, that law proscribes smuggling marihuana into the United States. In order to constitute smuggling, the contraband must be illegally *brought into* the United States. No evidence was presented that the marihuana in this case was ever outside the United States, or was otherwise "smuggled" therein. To the contrary, the only evidence presented shows that the marihuana in question was shipped from California aboard American Airlines to Washington National Airport. Thus, it is clear that the defendant could not in fact have been prosecuted for smuggling the marihuana under 21 U.S.C., section 176a. It may be noted in passing that, as under 26 U.S.C. section 4744, 21 U.S.C., section 176a, includes a presumption to facilitate the prosecution which mentions the word "possession." In addition to the fact that the statute is a smuggling statute under which the defendant could not have been prosecuted on these facts, the short answer to any contention that the defendant would make relating to the word "possession" appearing in the presumption is that this presumption was declared unconstitutional and invalid in Leary v. United States, 395 U.S. 6, 29–53, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

As a corollary to his contention that Congress has already spoken on the subject of possession and acquisition of untaxed and illegally imported marihuana, the defendant contends that by using the Virginia statute on possession of marihuana, the Assimilative Crimes

Act is being invoked "to enlarge the scope of Federal penal legislation" contrary to the dictates of the Supreme Court in Williams v. United States, 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946). In Williams, the defendant, a married white man, was convicted for statutory rape of a 17-year-old Indian girl on a reservation in Arizona. The prosecution was under the Assimilative Crimes Act and the Arizona statute which latter statute defined statutory rape as consensual sexual intercourse with a female between the ages of 16 and 18. In reversing the defendant's conviction, the Supreme Court held that since Congress had already defined statutory rape as consensual sexual intercourse with a female under 16, the Assimilative Crimes Act could not be employed to expand that crime. Furthermore, the court noted that the defendant could also have been prosecuted under the federal law defining adultery since he was married at the time of the act and Congress had enacted a statute making adultery a crime. This statute (and many others) was repealed shortly after the decision in Williams.

In answering this contention of the defendant, once again we must note that the congressional enactments cited by the defendant are separate and distinct offenses from the Virginia statute. As to 21 U.S.C., section 176a, which we have previously discussed, it is clear that since the defendant could not have been charged with smuggling in this case, the defendant cannot rely on that statute as an enactment which would preclude the use of the Assimilative Crimes Act. The second statute, 26 U.S.C. section 4744, deals with the acquisition, obtaining, transportation, and concealment of untaxed marihuana. Although it must be conceded that for one to acquire, obtain, transport or conceal, he must necessarily possess (or at least constructively possess), the statute is not aimed at the possession itself, but rather the act of transferring the marihuana from one person to another without paying the tax. We do not feel

inclined to read into the statute a meaning that was not stated or intended by Congress, and therefore find that the defendant's reliance on Williams is misplaced.

■■ The object of the Assimilative Crimes Act is "to fill in the gaps in the Federal Criminal Code, where no action of Congress has been taken to define the missing offense." United States v. Sosseur, 87 F.Supp. 225 (W.D.Wis., 1949) affirmed, 181 F.2d 873, 875 (7 Cir., 1950). In this case, we find that the Virginia statute and federal statute define separate crimes with different elements. Accordingly, the use of the Assimilative Crimes Act and the Virginia statute was clearly proper.

Even assuming that the Government could have prosecuted the defendant under 26 U.S.C., section 4744, as a transferee required to pay the tax imposed by section 4741(a) who has acquired or obtained the marihuana without having paid the tax or has transported or concealed untaxed marihuana, we are further persuaded by United States v. Jones, 244 F.Supp. 181 (S.D.N.Y.1965), affirmed, 365 F.2d 675 (2 Cir., 1966), and hold that the Government was not required to proceed under that statute but could have used the Assimilative Crimes Act. In Jones, the defendants were convicted of disorderly conduct in federal court by virtue of the Assimilative Crimes Act and New York State law (McKinney's Consol.Laws, c. 40, Penal Law, section 722[2]). Specifically, the defendants were arrested for blocking doorways to the courthouse by chaining themselves to the doors and chaining the doors together. After discussing Williams, the district court said (244 F.Supp. 183):

"We are faced with no such problem here, for there is no federal statute defining the offense spelled out in Subsection 2 of Section 722 of the New York Penal Law. Although the government, in my view, might properly have selected the alternative legal avenue of 18 U.S.C. § 1507 (picketing or

parading near a court house) to support its information, it was not error to proceed upon the essentially different theory of a disorderly conduct charge."

Concluding that the defendant's position is without merit, the sentence imposed on the plea of guilty will remain in full force and effect.