March 21, 1979

## 79-18  MEMORANDUM OPINION FOR THE DEPUTY ATTORNEY GENERAL

### Jurisdiction—Federal or State—"Victimless" Crimes Committed by Non-Indians on Indian Reservations—18 U.S.C. §§ 1152, 1153

This responds to your request for our opinion whether so-called "victimless" crimes committed by non-Indians on Indian reservations fall within the exclusive jurisdiction of the State or Federal courts, or whether jurisdiction is concurrent. The question posed is a difficult one[1] whose importance is far from theoretical. We understand that in the wake of *Oliphant* v. *Suquamish Indian Tribe*, 435 U.S. 191 (1978), serious concern exists as to the adequacy of law enforcement on a number of reservations. While many questions of policy may be involved in allocating law enforcement resources, you have asked—as an initial step—for our legal analysis of the jurisdictional limitations.

In an opinion to you dated June 19, 1978, we expressed the view that, although the question is not free from doubt, as a general matter existing law appears to require that the States have exclusive jurisdiction with regard to victimless offenses committed by non-Indians. At your request, we have carefully reexamined that opinion. We have also discussed the legal issue raised with others in the Department, with representatives of the Department of the Interior, and with Indian representatives; and we have carefully considered the thoughtful submission prepared by the Native American Rights Fund on behalf of the Litigation Committee of the National Congress of American Indians.

Our further consideration of the question has led us to conclude that our earlier advice fairly summarizes the essential principles. There are,

---

[1] The few writers who have touched obliquely on this question have expressed varying views. *See, e.g.,* Clinton, "Criminal Jurisdiction Over Indian Lands," 18 *Ariz. L. Rev.* 503, 529–30 (1976); Goldberg, "Public Law 280: The Limits of State Jurisdiction over Reservation Indians," 22 *U.C.L.A. L. Rev.* 535, 541 n. 25 (1975); Davis, "Criminal Jurisdiction Over Indian Country in Arizona," 1 *Ariz. L. Rev.* 62, 73–74 (1959).

however, several significant respects in which we wish to expand upon that analysis. There are also several *caveats* that should be highlighted in view of the large number of factual settings in which these jurisdictional issues might arise. We also note, prefatorily, that there are now several cases pending in courts around the country in which aspects of these jurisdictional issues are being, or are likely to be, litigated,[2] and we may therefore anticipate further guidance in the near term in applying the central principles discussed in this memorandum.

## I. Introduction

Two distinct competing approaches to the legal question you have posed are apparent. First, it may be contended that pursuant to 18 U.S.C. § 1152, with only limited exceptions, offenses committed on Indian reservations fall within the jurisdiction of the Federal courts. The Supreme Court's determination in *United States* v. *McBratney,* 104 U.S. 621 (1882), that the States possess exclusive jurisdiction over crimes by non-Indians against non-Indians committed on such enclaves, it is said, was based on an erroneous premise that § 1152 does not control; at best, the argument goes, *McBratney* creates a narrow exception to the plain command of the statute; this decision should therefore be given only limited application and should not be deemed to govern the handling of other crimes that have no non-Indian victim. A related argument might also be advanced: with rare exceptions, "victimless" crimes are crimes against the whole of the populace; unlike offenses directed at particular non-Indian victims (which implicate the Indian community only incidentally, or accidentally), on-reservation offenses without a particular target necessarily affect Indians and therefore fall outside of the limited *McBratney* exception and squarely within the terms of § 1152.

On the other hand, it may be argued that *McBratney* was premised on a view of the States' right to control the conduct of their citizenry generally anywhere within their territory; the presence or absence of a non-Indian victim is thus irrelevant. Although continuing Federal jurisdiction has been recognized with regard to offenses committed by or against Indians on a reservation, victimless crimes, by definition, involve no particularized injury to Indian persons or property, and therefore, under the *McBratney* rationale, exclusive jurisdiction remains in the States.

We have carefully considered both of these theses and, in our opinion, the correct view of the law falls somewhere between them. The *McBratney* rationale seems clearly to apply to victimless crimes so as, in the majority of cases, to oust Federal jurisdiction. Where, however, a particular

---

[2] *Mescalero Apache Tribe* v. *Griffin Bell et al.,* No. 78–926 C (D.N.M. filed Dec. 14, 1978) (jurisdiction over traffic offenses by non-Indians on Indian reservations); *State* v. *Herber,* No. 2CA–CR 1259 (Ariz. Ct. App. April 27, 1978), *pending on motion to reconsider* (authority of State police authorities to arrest non-Indian on Indian reservation).

offense poses a direct and immediate threat to Indian persons, property, or specific tribal interests, Federal jurisdiction continues to exist, just as is the case with regard to offenses traditionally regarded as having as their victim an Indian person or property. While it has heretofore been assumed that as between the States and the United States, jurisdiction is either exclusively State or exclusively Federal, we also believe that a good argument may be made for the proposition that even where Federal jurisdiction is thus implicated, the States may nevertheless be regarded as retaining the power as independent sovereigns to punish non-Indian offenders charged with "victimless" offenses of this sort.

## II.

Section 1152 of title 18 provides in pertinent part:

> Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country * * *.[3]

Given its full sweep, this provision would require that Federal law generally applicable on Federal enclaves of various sorts would be equally applicable on Indian reservations. Thus, Federal law with regard to certain defined crimes such as assault, 18 U.S.C. § 113, and arson, 18 U.S.C. § 81, would govern, as would the provisions of the Assimilative Crimes Act, 18 U.S.C. § 13, which renders acts or omissions occurring in areas within Federal jurisdiction Federal offenses where they would otherwise be punishable under State law.[4]

Notwithstanding the provision's broad terms, the Supreme Court has significantly narrowed § 1152's application. Thus, where a crime is committed on a reservation by a non-Indian against another non-Indian exclusive jurisdiction lies in the State absent treaty provisions to the contrary. *United States* v. *McBratney, supra; Draper* v. *United States,* 164 U.S. 240 (1896). Subsequent cases have, for the most part, carefully repeated the precise *McBratney* formula—non-Indian perpetrator and non-Indian victim—and have not elaborated on whether the status of the defendant alone or his or her status in conjunction with the presence of a non-Indian victim is critical.[5] However, the *McBratney* rule was given an

---

[3] The current version of § 1152 is not of recent vintage, but has roots in the early 19th century. *See* Act of March 3, 1817, 3 Stat. 383; Act of June 30, 1834, 4 Stat. 733, as amended by Act of March 27, 1854, 10 Stat. 269. *See also* Trade and Intercourse Act of 1790, 1 Stat. 137 (offenses by non-Indians against Indians).

[4] The Assimilative Crimes Act has been regarded as establishing Federal jurisdiction over "victimless" offenses occurring within a Federal enclave. *See, e.g., United States* v. *Barner,* 195 F. Supp. 103 (N.D. Cal. 1961) (reckless driving on air force base); *United States* v. *Chapman,* 321 F. Supp. 767 (E.D. Va. 1971) (possession of marijuana).

[5] *See, e.g., United States* v. *Wheeler,* 435 U.S. 313, 325 n. 21 (1978) ("crimes committed
(Continued)

added gloss in *New York ex rel. Ray* v. *Martin*, 326 U.S. 496 (1946). The Supreme Court in that case characterized its prior decisions as "stand[ing] for the proposition that States, by virtue of their statehood, have jurisdiction over such crimes notwithstanding [18 U.S.C. § 1152]." 326 U.S. at 500.[6] Similarly, in *Surplus Trading Co.* v. *Cook,* 281 U.S. 647, 651 (1930), the Court spoke in the following broad terms: "[Indian] reservations are part of the State within which they lie and her laws, civil and criminal, have the same force therein as elsewhere within her limits, save that they can have only restricted application to the Indian wards." The Court's rationale thus appears to be rooted at least to some extent in basic notions of federalism.

It is, moreover, significant that the historical practice—insofar as we have found evidence on this matter—has been to regard *McBratney* as authority for the States' assertion of jurisdiction with regard to a variety of "victimless" offenses committed by non-Indians on Indian reservations. Examination of the limited available precedent provided by turn-of-the-century State appellate court decisions reveals that State jurisdiction was upheld with regard to non-Indian offenders charged with violating State fish and game laws while on an Indian reservation. *See, Ex parte Crosby,* 38 Nev. 389, 149 P. 989 (1915).[7] An early Washington State case held that a non-Indian charged with the "victimless" crime of manufacturing liquor on an Indian reservation was also held to be properly

---

(Continued)

by non-Indians against non-Indians"); *United States* v. *Antelope*, 430 U.S. 641, 643 n. 2 (1977) ("non-Indians charged with committing crimes against other non-Indians"), 644 n. 4 ("crimes by non-Indians against other non-Indians"); *Village of Kake* v. *Egan*, 369 U.S. 60, 73 (1962) ("murder of one non-Indian by another"); *Williams* v. *United States,* 327 U.S. 711, 714 (1946) ("offenses committed on this reservation between persons who are not Indians"); *Donnelly* v. *United States,* 228 U.S. 243, 271 (1913) ("offenses committed by white people against whites"). *But see United States* v. *Sutton*, 215 U.S. 291, 295 (1909) (characterizing *Draper* as holding that the State enabling act "did not deprive the State of jurisdiction over crimes committed within a reservation by others [except] Indians or against Indians").

⁶ That the *Martin* discussion is more than a *post hoc* explanation for the *McBratney* Court's failure to give sufficient weight to the plain language of § 1152 is suggested by the careful language of *United States* v. *Rogers,* 45 U.S. (4 How.) 567, 572 (1846), recognizing Federal jurisdiction under the early version of § 1152 with regard to a crime committed by a non-Indian against a non-Indian victim on a territorial reservation ("where the country occupied by [the Indian tribes] is not within the limits of one of the States, Congress may by law punish any offence [sic] committed there, no matter whether the offender be a white man or an Indian"). *See also, In re Mayfield,* 141 U.S. 107, 112 (1891).

⁷ More recently, in *State ex rel. Nepstad* v. *Danielson*, 149 Mont. 438, 427 P. 2d 689 (1967), the Montana Supreme Court expressed a similar view after determining that the application of State law had not been preempted by the passage of 18 U.S.C. § 1165, making unlawful the unauthorized entry onto Indian land for purposes of hunting, fishing, or trapping. In 1971, relying on *Danielson, Crosby,* and opinions of the Attorneys General of Nevada, New Mexico, and Oregon, the Solicitor of Interior opined that a State would have both the power and the right to exercise jurisdiction over non-Indians alleged to have violated State game laws on an Indian reservation. 78 I.D. 101, 104.

within the jurisdiction of the State's courts. *See, State* v. *Lindsey,* 133 Wash. 140, 233 P. 327 (1925).[8] State jurisdiction has also been upheld at least as to a woman regarded by the court as a non-Indian who had been charged with adultery; the charge against the other alleged participant in this consensual offense, an Indian man, was dismissed as falling outside the court's jurisdiction. *See, State* v. *Campbell,* 53 Minn. 354, 55 N.W. 553 (1893).[9] More recent decisions, while not examining the question in depth, have upheld State jurisdiction as to possessory drug offenses, *State* v. *Jones,* 92 Nev. 116, 546 P. 2d 235 (1976), and as to traffic offenses by non-Indians on Indian reservations, *State* v. *Warner,* 71 N.M. 418, 479 P. 2d 66 (1963).[10]

At the same time as *McBratney* has been given such broad application, however, the courts have carefully recognized that Federal jurisdiction is retained with regard to offenses against Indians. The Court in both *McBratney* and *Draper* was careful to limit its holdings to the precise facts presented, reserving the question whether State jurisdiction would also be found with regard to the "punishment of crimes committed by or against Indians, [and] the protection of the Indians in their improvements." *See* 104 U.S. at 624. Subsequent decisions have expressly recognized that where a crime is committed in Indian country by a non-Indian against the person or property of an Indian victim, Federal jurisdiction will lie. *United States* v. *Chavez,* 290 U.S. 357 (1933) (theft); *United States* v. *Ramsey,* 271 U.S. 467 (1926) (murder); *Donnelly* v. *United States,* 228 U.S. 243 (1913) (murder). Insight concerning the significance of and reasoning behind this exception to *McBratney's* broad sweep is provided by *United States* v. *Bridleman,* 7 F. 894 (1881), a decision of the U.S. District Court for Oregon. The case involved the theft, on the Umatilla Reservation, of an Indian's blanket by a white man. Judge Deady, writing without the benefit of the *McBratney* decision decided the same year, upheld Federal jurisdiction, reasoning that while the admission of Oregon into the Union in 1859 ousted general territorially based jurisdiction previously asserted by the Federal Government, "the jurisdiction which arises out of the subject—the intercourse between the inhabitants of the state and the Indian tribes therein—remained as if no change had taken place in the relation of the territory to the general government." *Id.* at

---

[8] Where the identical acts that constitute a violation of State law would also constitute a violation of a Federal statute expressly prohibiting conduct such as unauthorized hunting and fishing or manufacture or sale of liquor on a reservation without attempting to preempt State jurisdiction, a separate prosecution under Federal law would of course remain a possibility. *See, e.g., United States* v. *Lanza,* 260 U.S. 377, 382 (1922).

[9] The only other early case with which we are familiar upheld State jurisdiction with regard to one who appeared to be a non-Indian charged with obstructing the use of Indian lands. *See, State* v. *Adams,* 213 N.C. 243, 195 S.E. 822 (1938). The statement of the case in the appellate court's opinion is extremely obscure; we therefore regard the apparent holding as having limited significance.

[10] *See also,* Op. Ariz. Att'y Gen. No. 58–71 (1958).

899. He therefore concluded that to the extent that § 1152 provided for punishment of persons "for wrong or injury done to the person or property of an Indian, and *vice versa*," it remained in force. *Id.*

*Bridleman* and the numerous subsequent cases thus support the view that Federal jurisdiction exists with regard to offenses committed by non-Indians on the reservation against the person or property of Indians.

The principle that tangible Indian interests—in the preservation of person and property—should be protected dates from the earliest days of the Republic when it was embodied in the Trade and Intercourse Acts.[11] To say that these tangible interests should be protected is not, however, necessarily to say that a generalized interest in peace and tranquility is sufficient to trigger continuing Federal jurisdiction. *McBratney* itself belies that view since the commission of a murder on the reservation—a much more significant breach of the peace than simple vagrancy, drug possession, speeding, or public drunkenness—provided no basis for an assertion of Federal jurisdiction. Indeed, as the reasoning of *Bridleman* suggests, it is necessary that a clear distinction be made between threats to an Indian person or property and mere disruption of a reservation's territorial space.

We therefore believe that a concrete and particularized threat to the person or property of an Indian or to specific tribal interests (beyond preserving the peace of the reservation) is necessary before Federal jurisdiction can be said to attach. In the absence of a true victim, unless it can be said that the offense peculiarly affects an Indian or the tribe itself, *McBratney* would control, leaving in the States the exclusive jurisdiction to punish offenders charged with "victimless" crimes. Thus, in our view, most traffic violations, most routine cases of disorderly conduct, and most offenses against morals such as gambling which are not designed for the protection of a particular vulnerable class, should be viewed as having no real "victim," and therefore to fall exclusively within State competence.

In certain other cases, however, a sufficiently direct threat to Indian persons or property may be said to bring an ordinarily "victimless" crime within Federal jurisdiction. Certain categories of offenses may be identified that routinely involve this sort of threat to Indian interests. One such category would be crimes calculated to obstruct or corrupt the functioning of tribal government. Included in this category would be bribery of tribal officials in a situation where State law in broad terms prohibits bribery of public officials;[12] such an offense would cause direct injury to the tribe

---

[11] *See, e.g.,* § 5, Act of July 22, 1790, 1 Stat. 137 ("crimes upon, or trespass against, the person or property of any friendly Indian or Indians"). *See also, Donnelly* v. *United States, supra,* 228 U.S. at 272 ("crimes committed by white men against the persons or property of the Indian tribes"); *United States* v. *Chavez,* 290 U.S. at 365 ("where the offense is against an Indian or his property").

[12] The effect of the Assimilative Crimes Act is to make punishable under Federal law minor offenses as defined and punished under State law. *See, Smayda* v. *United States,* 352 F. (2d) 251, 253 (9th Cir. 1965). Whether bribery of tribal officials would constitute an offense punishable under Federal law would therefore depend on the precise terms of the applicable State statute and whether it applied to public officials generally or only to enumerated officers of the State or local governments.

and cannot therefore be regarded as truly "victimless." A second group of offenses that may directly implicate the Indian community are consensual crimes committed by non-Indian offenders in conjunction with Indian participants, where the Indian participant, although willing, is within the class of persons which a particular State statute is specifically designed to protect. Thus, Federal jurisdiction will lie under 18 U.S. § 2032 for the statutory rape of an Indian girl, as would a charge of contributing to the delinquency of a minor, where assimilated into Federal law pursuant to 18 U.S.C. § 13. A third group of offenses that may be punishable under the law of individual States and assimilated into Federal law pursuant to the Assimilative Crimes Act would also seem intrinsically to involve the sort of threat that would cause Federal jurisdiction to attach where an Indian victim may in fact be identified. Such crimes would include reckless endangerment, criminal trespass, riot or rout, and disruption of a public meeting or a worship service conducted by the tribe.

In certain other cases, conduct that is generally prohibited because of its ill effects on society at large and not because it represents a particularized threat to specific individuals may nevertheless so specifically threaten or endanger Indian persons or property that Federal jurisdiction may be asserted. Thus, speeding in the vicinity of an Indian school or in an obvious attempt to scatter Indians collected at a tribal gathering, and a breech of the peace that borders on an assault may in unusual circumstances be seen to constitute a Federal offense.

## III.

Whatever the contours of the area in which Federal jurisdiction may be asserted, a final critical question remains to be considered: whether State authorities may also legally charge a non-Indian offender with commission of an offense against State law or whether Federal jurisdiction, insofar as it attaches, is exclusive. This issue is an exceedingly difficult one and many courts, without carefully considering the question, have assumed that Federal jurisdictions whenever it obtains is exclusive. We nevertheless believe that it is a matter that should not be regarded as settled before it has been fully explored by the courts. Although *McBratney* firmly establishes that State jurisdiction, where it attaches because of the absence of a clear Indian victim, is exclusive, we believe that, despite Supreme Court *dicta* to the contrary, it does not necessarily follow that, where an offense is stated against a non-Indian defendant under Federal law, State jurisdiction must be ousted.

The exclusivity of Federal jurisdiction vis-a-vis the States with regard to 18 U.S.C. § 1153, the Major Crimes Act, has been recognized, *see, e.g., Seymour* v. *Superintendent,* 368 U.S. 351 (1962), but has only formally been addressed and decided in the past year. *See, United States* v. *John,* 437 U.S. 634, 651 (1978). The Court in *John* relied on notions of preemption and the slight evidence provided by the legislative history of this

provision to reach a result that had long been assumed by the lower courts.[13]

Section 1152 has likewise been viewed as ousting State jurisdiction where Indian defendants are involved.[14] Supreme Court *dicta*, moreover, suggests that Federal jurisdiction may similarly be exclusive where offenses by non-Indians against Indians within the terms of § 1152 are concerned.[15] Square holdings to this effect are, however, rare. The Supreme Court of North Dakota has held that State jurisdiction is ousted where Federal jurisdiction under § 1152 is seen to exist in cases where non-Indians have committed offenses against Indians on the reservation.[16] At least, three other earlier cases suggest a contrary result, however, recognizing that, as in *McBratney,* the States have a continuing interest in the prosecution of offenders against state law even while Federal prosecution may at the same time be warranted.[17]

Although it would mean that § 1152 could not be uniformly applied to provide for exclusive Federal jurisdiction in all cases of interracial crimes, a conclusion that both Federal and State jurisdiction may lie, where conduct on a reservation by a non-Indian presenting a direct and immediate

---

[13] *See, e.g., Application of Konaha,* 131 F. (2d) 737 (7th Cir. 1942); *In re Carmen's Petition,* 165 F. Supp. 942, 948 (N.D. Cal. 1958), *aff'd sub nom., Dickson* v. *Carmen,* 270 F. (2d) 809 (9th Cir. 1959), cert. denied, 361 U.S. 934 (1960).

[14] *See, e.g., United States ex rel. Lynn* v. *Hamilton,* 233 F. 685 (W.D.N.Y. 1915); *In re Blackbird,* 109 F. 139 (W.D. Wis. 1901); *Application of Denetclaw,* 83 Ariz. 299, 320 P.2d 697 (1958); *State* v. *Campbell,* 53 Minn. 354, 55 N.W. 553 (1893); *Arquette* v. *Schneckloth,* 56 Wash. 2d 178, 351 P.2d 92 (1960).

[15] *See, State of Washington* v. *Confederated Bands and Tribes of the Yakima Indian Nation,* 47 U.S.L.W. 4111, 4113 (Jan. 16, 1979) ("State law reaches within the exterior boundaries of an Indian reservation only if it would not infringe 'on the right of reservation Indians to make their own laws and be ruled by them.' *Williams* v. *Lee,* 358 U.S. 217, 219-20. As a practical matter, this has meant that criminal offenses by or against Indians have been subject only to federal or tribal laws . . . except where Congress in the exercise of its plenary and exclusive power over Indian affairs has 'expressly provided that state laws shall apply' "); *Williams* v. *Lee,* 358 U.S. at 220 ("if the crime was by or against an Indian, tribal jurisdiction or that expressly conferred on other [than state] courts has remained exclusive"); *id.* at n. 5 ("Congress has granted to the federal courts exclusive jurisdiction upon Indian reservations over 11 major crimes. And non-Indians committing crimes against Indians are now generally tried in federal courts . . . ."); *Williams* v. *United States,* 327 U.S. 711, 714 (1946) ("the laws and courts of the United States, rather than those of Arizona, have jurisdiction over offenses committed [on the reservation] by one who is not an Indian against one who is an Indian"). *See also, Bartkus* v. *Illinois,* 359 U.S. 121, 161 (1959) (Black, J., dissenting); *United States* v. *Cleveland,* 503 F. (2d) 1067 (9th Cir. 1975) (Federal law applies to assault by non-Indian against an Indian).

[16] *State* v. *Kuntz,* 66 N.W. 2d 531 (N. Dak. 1954) (State prosecution of non-Indian for unlawful killing of livestock of Indian on Indian reservation dismissed on grounds tha Federal jurisdiction of the offense was exclusive).

[17] *See, State* v. *McAlhaney,* 220 N.C. 387, 17 S.E. 2d 352 (1941) (State jurisdiction upheld as to non-Indian charged with kidnapping Indian on Indian reservation); *Oregon* v. *Coleman,* 1 Ore. 191 (1855) (territorial jurisdiction upheld as to non-Indian charged with sale o liquor to Indian on reservation notwithstanding existence of comparable offense unde Federal law). *See also, United States* v. *Barnhart,* 22 F. 285, 291 (D. Ore. 1884) (Feder jurisdiction would exist as to non-Indian charged with manslaughter of Indian on reservatio even if State court had jurisdiction of offense under State law) (dicta).

threat to an Indian person or property constitutes an offense against the laws of each sovereign, could not be criticized as inconsistent or anomalous. Section 1153 was enacted many years after § 1152 had been introduced as part of the early Trade and Intercourse Acts; its clear purpose was to provide a Federal forum for the prosecution of Indians charged with major crimes, a forum necessary precisely because no State jurisdiction over such crimes was contemplated. Consistent with this purpose, § 1152 may properly be read to preempt State attempts to prosecute Indian defendants for crimes against non-Indians as well.

In cases involving a direct and immediate threat by a non-Indian defendant against an Indian person or property, however, a different result may be required. The State interest in such cases, as recognized by *McBratney*, is strong. Section 1152 itself recognizes that where an Indian is charged with an interracial crime against a non-Indian, Federal jurisdiction is to be exercised only where the offender is not prosecuted in his or her own tribal courts. But in no event would the State courts have jurisdiction in such a case, absent a separate grant of jurisdiction such as that provided by Pub. L. No. 83–280, 67 Stat. 588. An analogous situation is presented where a non-Indian defendant is charged with a crime against an Indian victim; the Federal interest is not to preempt the State courts, but only to retain authority to prosecute to the extent that State proceedings do not serve the Federal interest.

This result follows from the preemption analysis set forth in *Williams* v. *Lee,* where the Court recognized that, in the absence of express Federal legislation, the authority of the States should be seen to be circumscribed only to the extent necessary to protect Indian interests in making their own laws and being ruled by them. While significant damage might be done to Indian interests if Indian defendants could be prosecuted under State law for conduct occurring on the reservation, no equivalent damage would be done if State as well as Federal prosecutions of non-Indian offenders against Indian victims could be sustained.

Finally, it might be argued that such a result is consistent with principles governing the administration of other Federal enclaves. It is generally recognized that a State may condition its consent to a cession of land involving Government purchase or condemnation by reserving jurisdiction to the extent consistent with the Federal use. *Kleppe* v. *New Mexico*, 426 U.S. 529, 540 (1976); *Paul* v. *United States,* 371 U.S. 245, 265 (1963). Although Indian reservations are in many respects unique, insofar as they existed in most cases prior to statehood rather than arising as a result of a cession agreement or condemnation proceedings, an analogy may nevertheless serve.

Since, in most cases, States may retain concurrent jurisdiction except to the extent that that would interfere with the Federal use, they may do so here as well by prosecuting non-Indian offenders while Federal jurisdiction at the same time remains as needed to protect Indian victims in the event that a State prosecution is not undertaken or is not prosecuted in good

119

faith. For these reasons, therefore, we believe a strong possibility exists that prosecution may be commenced under State law against a non-Indian even in cases where, as a result of conduct on the reservation that represents a direct and immediate threat against an Indian person or property, Federal jurisdiction may also attach.

## IV. Conclusion

In sum, although we understand that in many cases commission by non-Indians of crimes traditionally regarded as victimless touches in a significant way upon the peace and tranquility of Indian communities, as a general rule we believe that such offenders fall within the exclusive jurisdiction of State courts. A more limited class of crimes involving direct injury to Indian interests should, however, be recognized as having Indian victims—whether the tribe itself, an Indian who falls within the class of persons to whom certain statutes are particularly designed to afford protection, or an individual Indian or group of Indians who are victimized by conduct that either as a matter of law or as a matter of fact constitutes a direct and immediate threat to their safety. In such cases, Federal law enforcement officers may properly prosecute non-Indian offenders in the Federal courts. We also believe that despite the common understanding that jurisdiction over crimes on Indian reservations is either exclusively State or exclusively Federal, a substantial case can be made for the proposition that the States are not ousted from jurisdiction with regard to offenses committed by non-Indian offenders that pose a direct and substantial threat to Indian victims, but in their separate sovereign capacities may prosecute non-Indian offenders for violations of applicable State law as well.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*